IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALLIED WORLD NATIONAL ASSURANCE COMPANY | * * * | CIVIL NO. 3:21-cv-00431-BAJ-EWD |
| Plaintiff, | * * | JUDGE BRIAN A. JACKSON |
| VERSUS | * * | |
| | * | MAG. JUDGE ERIN WILDER-DOOMES |
| NISUS CORPORATION and SPEARS MANUFACTURING COMPANY | * * | |
| Defendants. | * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN OPPOSITION TO THE LEMOINE COMPANY, LLC'S AND DOSTER CONSTRUCTION COMPANY, INC.'S MOTION TO DISMISS NISUS CORPORATION'S THIRD-PARTY COMPLAINT

Third-Party Complainant, Nisus Corporation ("Nisus"), provides this Memorandum in Opposition to The Lemoine Company, LLC's ("Lemoine") and Doster Construction Company, Inc.'s ("Doster") 12(b)(6) Motion to Dismiss:

## I. SUMMARY OF ARGUMENT:

Lemoine and Doster's Motion to Dismiss should be denied because Nisus' Third-Party Complaint states a plausible claim for relief for implied immunity from Lemoine and Doster under Louisiana law.  Primary plaintiff, Allied World National Assurance Company ("Allied"), has asserted a products liability claim against Nisus alleging that it suffered damages resulting from Nisus' product, Bora-Care® with Mold-Care®, that was allegedly used during the construction of the Nicholson Gateway Project (the "Project").

1

Nisus' well-pleaded facts and affirmative defenses[1] state a plausible claim for indemnity from Lemoine and Doster under Louisiana law. Nisus' Third-Party Complaint suggests that Lemoine and Doster caused the same damage for which Allied seeks to hold Nisus liable, namely, the incompatibility between the products used in the installation of the fire suppression sprinkler system ("sprinkler system"), which caused the leaks and damages sued upon. Further, any damages sustained by Allied were caused by the unforeseen misuse of Nisus' product, which was allegedly used by Lemoine, Doster, and the subcontractors it retained to construct the Project.

Nisus has denied any wrongdoing associated with construction of the Project. Further, Nisus asserts that any fault attributed to Nisus was constructive considering Nisus was not involved in construction, nor exercised operational control over the activities, work, premises, or equipment used by Lemoine, Doster, or any subcontractors that had been retained by Lemoine or Doster to construct the Project.

Implied indemnity is justified to prevent Lemoine and Doster, the general contractors for the Project, from not having to pay Nisus for any alleged damages that Nisus may be called upon to pay unto Allied if Allied is successful in its action. Therefore, Nisus' Third-Party Complaint against Lemoine and Doster is appropriate and Lemoine and Doster's Motion to Dismiss should be denied.

---

[1] An affirmative defense is generally defined as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true." Black's Law Dictionary 451 (8th ed. 2004). Finally, by definition, an affirmative defense raises a new matter or issue that will defeat the plaintiff's claim on the merits, even assuming that claim is valid and that the allegations of the petition are true. *See Webster v. Rushing*, 316 So.2d 111, 114 (La. 1975); *Fishbein v. State ex rel. LSU Health Sciences Ctr.*, 06-0549, p. 6 (La. App. 1 Cir. 3/9/07), 960 So.2d 67, 71-2, *writs denied*, 07-0730 (La. 6/22/07), 959 So.2d 495, and 07-0708 (La. 6/22/07), 959 So.2d 505. Implicit in that definition is the conclusion that a defendant is not required to raise an issue as an affirmative defense if it does not raise a "new matter." *Fishbein*, 06-0549 at p.6, 960 So.2d at 72. The purpose of pleading a special defense is to give fair and adequate notice of the nature of the defense so that the plaintiff is not surprised. *Webster*, 316 So.2d at 114.

## II. BACKGROUND

This action arises out of the Project, a 28-acre mixed use development consisting of student apartment housing, retail, university recreation space, and surface and structured parking located along Nicholson Drive on the Louisiana State University ("LSU") campus.[2] The apartment housing complex consists of student apartments in five buildings named Canal, Delta, Gulf, Marsh, and Oxbow.[3] The Project began as a public-private partnership between LSU, the LSU Property Foundation, Rise Tigers, LLC ("Rise"), and Provident Resources Group, Inc. ("Provident"), to design, build, finance, operate, and maintain student apartment housing at the Project.[4] LSU partnered with Provident and Rise to undertake the first phase of the development. Provident financed the design and construction of the apartment housing complex and Rise served as the developer for the Project.[5]

On August 8, 2016, Rise entered into an Initial Construction Services Agreement with Lemoine.[6] Thereafter, on September 1, 2016, Rise and Lemoine entered into a contract for Lemoine to act as the general contractor for the construction of the Project, which included the five apartment buildings.[7] On that same day, Lemoine entered into a written contract with Doster for Doster to construct a substantial portion of the work required by Lemoine's contract with Rise.[8]

The apartment buildings were designed and outfitted with a sprinkler system comprised of FlameGuard® chlorinated polyvinyl chloride ("CPVC") pipe manufactured by Spears

---

[2] R. Doc. 9, ¶VII.
[3] *Id*. at ¶VIII.
[4] *Id*. at ¶IX.
[5] *Id*. at ¶¶X and XI.
[6] *Id*. at ¶XIII.
[7] *Id*. at ¶XIV.
[8] *Id*. at ¶XV.

Manufacturing, Inc. ("Spears").[9] The CPVC pipe was run throughout the apartment buildings in the hallways, corridors, and throughout the individual apartments and common areas.[10]

Construction on the Project was substantially completed on June 25, 2018.[11] Sometime after substantial completion, a leak was noticed in the sprinkler system in one of the Project's apartment buildings.[12] Thereafter, additional leaks were discovered in another building.[13]

On July 23, 2021, Allied filed its Complaint asserting a products liability claim against Nisus. Nisus is the alleged manufacturer of Bora-Care® with Mold-Care®, a moldicide spray, which Allied claims was used at some point during construction of the Project to prevent the growth of mold and mildew on the interior walls.[14] On September 27, 2021, Nisus filed its Answer and Affirmative Defenses to Allied's Complaint and a Third-Party Complaint against Niles Bolton Associates, Inc., the architect for the Project, Lemoine and Doster.

Nisus alleges Lemoine and Doster had a duty to perform all services in connection with the construction of the Project, including the proper installation of the sprinkler system and all component parts therein, in a skillful, workmanlike, prudent, and non-reckless manner.[15] Nisus further alleges that Lemoine and Doster were negligent and breached their duty of care in the installation of the sprinkler system and component parts therein in: (1) failing to take proper precautions while commissioning and during the installation of the sprinkler system to ensure that it was properly installed and would not crack; (2) failing to perform its inspection of the sprinkler system and its component parts; (3) failing to install the sprinkler system and component parts in a good and workmanlike manner; (4) negligently delegating, hiring, and/or

---

[9] *Id*. at ¶XVI.
[10] *Id*. at ¶XVII.
[11] *Id*. at ¶XXII.
[12] *Id*. at ¶XXIII.
[13] *Id*. at ¶XXIV.
[14] R. Doc. 1, ¶¶20-21.
[15] *Id*. at ¶¶XXX and XXXV.

supervising the workmanship of the services delegated or subcontracted out; and (5) failing to

take all other reasonable precautions to prevent the injury or damage that resulted.[16]

Nisus has also asserted numerous affirmative defenses that support its claim against

Lemoine and Doster, namely:

- If Plaintiff suffered injury or damages as alleged, which is denied, such injury
  or damage resulted from acts or omissions of persons or entities for which
  Nisus is neither liable nor responsible or resulted from causes that are not
  related or connected with any product sold, distributed, or manufactured by
  Nisus. Such acts or omissions on the part of others or causes constitute an
  independent, intervening and sole proximate cause of Plaintiff's alleged injury
  or damages.[17]

- If Bora-Care with Mold Care® is proven to be manufactured by Nisus and is
  proven to have been installed in the Nicholson Gateway Project, Nisus denies
  that the Bora-Care with Mold Care® contained any defect that caused any
  damages to Plaintiff.  In the alternative, Nisus affirmatively alleges that any
  damages were caused by an unforeseen misuse of the Bora-Care with Mold
  Care® product by any third party, including contractors and/or subcontractors
  involved in the construction of the Nicholson Gateway Project, under the
  supervision and control of some party or company other than Nisus, for which
  Nisus has no responsibility.[18]

- The damages of which Plaintiff complains were caused by or the result of
  superseding actions of independent third parties, third persons, contractors,
  and/or subcontractors for which Nisus has no responsibility, or by intervening
  events, factors, circumstances, occurrences or conditions that were in no way
  caused or contributed to by Nisus, and over which Nisus had no control. This
  includes but is not limited to the general contractors and its subcontractors
  who ignored warnings and/or approved the application of Bora-Care with
  Mold Care® on CPVC pipe used as parts of the fire suppression sprinkler
  system. These intervening, superseding causes relieve Nisus of any liability.[19]

- Nisus alleges and avers that any damages and/or losses and/or expense
  incurred that Plaintiff alleges they have sustained and/or will sustain, were the
  result of the fault, negligence, and/or neglect of the general contractors and/or
  subcontractors own fault and breach of their contractual obligations of good
  workmanship, including following installation instructions, for permitting the

---

[16] *Id*. at ¶¶XXXII and XXXVII.
[17] *R*. Doc. 9, Tenth Defense, p. 15.
[18] *Id*. at Eighteenth Defense, p. 17.
[19] *Id*. at Twenty-First Defense, p. 18.

installation or application by spraying or otherwise of incompatible sealant, caulk, spray, cement, gypsum, paint, tape, excessive cement, or any other foreign substance or material on any of the CPVC pipe, and/or were caused by the fault of independent third parties, third persons, or other parties, including the fault of the general contractors' subcontractors that installed or applied, by spraying or otherwise, incompatible sealant, caulk, spray, cement, gypsum, paint, tape, excessive cement, or any other foreign substance or material to any of the CPVC pipe, and/or the fault of Spears Manufacturing, who allegedly manufactured the sealant that was applied to any of the CPVC pipe.[20]

- Nisus pleads that it did not exercise operational control over the activities, work, premises, and/or equipment in question at the Nicholson Gateway Project, in whole or in part, such that any claims by the Plaintiff against Nisus should be dismissed with prejudice.[21]

- Any damages Plaintiff alleges they have sustained were the result of superseding actions of an independent third party, third person, contractors, and/or subcontractors for which Nisus has no responsibility, or by intervening events, factors, circumstance, occurrences, or conditions that were in no way caused or contributed to by Nisus, and over which Nisus had no control.[22]

- In the alternative, Nisus avers and alleges the fault of others who may have specified or approved the use and application by spraying or otherwise incompatible sealant, caulk, spray, gypsum, paint, excessive cement, or any other foreign substance or material, made or used by others, on any CPVC pipe manufactured by Spears Manufacturing that was installed in the Nicholson Gateway Project, when they knew or should have known such sealant, caulk, spray, gypsum, paint, excessive cement or any other foreign substance or material may be incompatible with the CPVC pipe.[23]

Nisus has prayed for judgment against Lemoine and Doster plus other equitable and legal relief as the Court may deem just and proper.[24]

---

[20] *Id*. at Twenty-Fifth Defense, pp. 19-20.
[21] *Id*. at Twenty-Eighth Defense, pp. 20-21.
[22] *Id*. at Thirty-First Defense, pp. 21.
[23] *Id*. at Thirty-Second Defense, p. 21.
[24] *Id*. at ¶XXXIX(b).

6

## III.  LAW AND ARGUMENT:

### A.  Legal Standard.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 622, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556).  Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of the cause of action" is required.  *Twombly*, 550 U.S. at 555.  When conducting its inquiry, the Court "accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc*., 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

### B.  Lemoine and Doster Owe Nisus Implied Indemnity.

Lemoine and Doster seek dismissal of Nisus' Third-Party Complaint because Nisus did not seek indemnity or contribution from them, nor did Nisus allege any factual or legal basis under which Lemoine and Doster could be liable to Nisus for any damages, including those prayed for in the main demand.  Lemoine and Doster also assert that Nisus' third-party claims

are merely disguised affirmative defenses, which constitute an improper use of a third-party claim in light of Louisiana's comparative fault regime.

Implied indemnity is rooted in the civilian concept of restitution:

> Indemnity in its most basic sense means reimbursement, and may lie when one party discharges a liability which another rightfully should have assumed. **It is based on the principle that everyone is responsible for his own wrongdoing.**

*Nassif v. Sunrise Homes, Inc.*, 98-3193 (La. 6/29/99); 739 So.2d 183, 185 (emphasis added); *Martco Ltd. Partnership v. Bruks Inc.*, 430 Fed.Appx. 332, 337; *Buratt v. Red Frog Events, LLC*, 2017 U.S. Dist. LEXIS 184301, p. 6 (M.D. La. 11/6/17). A third-party plaintiff successfully establishes a claim for implied indemnity by pleading sufficient facts that suggest that third-party defendant "caused or contributed to the same damages for which" the primary plaintiff seeks to hold third-party plaintiff liable. *JAH Enterprises*, 2017 U.S. Dist. LEXIS at pp. 16-17 *accord* FED. R. CIV. P. 14(a)(1).

The Court should dismiss a third-party claim for indemnity if "[t]here is no foreseeable combination of findings, viewing the allegations of the pleadings ... in the light most favorable to [the party seeking indemnity], that could result in [that party] being cast in judgment for mere technical or passive fault." *Threlkeld v. Haskins Law Firm*, 922 F.2d 265, 267– 68 (5th Cir. 1991) (citation and internal quotation marks omitted). An action for indemnity will lie so long as the party's fault "can be characterized as merely technical or constructive," and where the party "was exposed to liability and compelled to pay damages ... on account of the negligent act of" the third-party defendant. *See, Martco*, 430 Fed.Appx. at 336. When considering whether there is a foreseeable combination of findings that could find third-party plaintiff is only technically liable for third-party defendant's alleged negligence, the Court looks at the third-party complaint itself, without making factual findings at this stage. *Id.* at p. 338.

Here, the Court shall consider whether Nisus has plausibly alleged that it is entitled to indemnity from Lemoine and Doster under Louisiana law.

Nisus' well-pleaded allegations satisfy all the requirements to state a cause of action for implied indemnity against Lemoine and Doster. For example, Nisus alleges that it is free from fault and that Lemoine and Doster caused or contributed to the damages for which Allied seeks to hold Nisus liable, namely, the incompatibility between the products used in the installation of the sprinkler system, which caused the CPVC pipe to crack, thus leading to leaks in the sprinkler system.[25] Nisus also asserts that any damages were caused by an unforeseen misuse of Nisus' Bora-Care® with Mold-Care® product by Lemoine or Doster and/or subcontractors involved in the construction of the Project.[26] Finally, Nisus has also asserted facts that show it had nothing to do with the construction, operational control over the activities, work, premises, or equipment used by Lemoine Doster, or any subcontractors that had been retained by Lemoine and Doster to construct the Project.

The jurisprudence is clear that Nisus need not unequivocally establish at the pleading stage that it is completely without fault. *Buratt*, 2017 U.S. Dist. LEXIS 184301 at p. 9 ("At this stage of litigation, we are only concerned with whether [third party plaintiff] has alleged sufficient facts to state a plausible claim for indemnity.") (internal citations omitted); *see also, e.g., Martco*, 403 Fed.Appx. at 338.

Nisus has set forth a substantial amount of factual allegations that deny its fault and involvement in the construction of the Project. Lemoine and Doster fail to bear their burden of showing beyond a doubt that there are no set of facts that could support Nisus' third-party demand and their Motion to Dismiss should be denied.

---

[25] *Id*. at ¶XXI; see also, Nisus' Sixteenth, Eighteenth, Twentieth, Twenty-First, Twenty-Second, Twenty-Fifth, Twenty-Seventh, Twenty-Eighth, Thirty-First, and Thirty-Second Affirmative Defenses.
[26] *Id*. at Eighteenth Defense, p. 17.

Additionally, Lemoine and Doster's focus on comparative fault is also misplaced. While Lemoine and Doster are correct that Nisus cannot be liable for fault that is not its own, this notion does not preclude a third-party demand in the instance where a party seeks to hold a defendant responsible for a tort purportedly committed by another. Implied indemnity does not subsume comparative fault principles because the sole purpose of implied indemnity is to bring in those parties that are allegedly solely responsible for the torts alleged against the defendant/third-party plaintiff.

In *Patout v. Underwriters at Lloyd's London*, 2016-879 (La. App. 3rd Cir. 3/1/17), 213 So.3d 1283, 1285, *writ denied*, 2017-0544 (La. 5/19/17), 221 So.3d 77, the Third Circuit, in maintaining a manufacturer's cross-claim for contribution and indemnity, held that a party not at fault that incurs liability due solely to the fault of others is entitled to seek recovery from the party at fault for implied or passive indemnity.

Mark Patout ("Patout") filed his Petition for Damages on November 20, 2015, naming as defendants his brother, Allen Patout, as the property owner; his insurer, Underwriters at Lloyd's, London; Pittsburgh Automotive as the manufacturer and seller of the hoist system at issue; Harbor Freight Tools USA, Inc. ("Harbor Freight"), as the manufacturer and seller of the hoist system at issue; and unknown insurers. The petition indicates that Allen Patout built the elevator himself, using a hoist system manufactured and sold by Pittsburgh Automotive and Harbor Freight.

Harbor Freight filed an Answer and Affirmative Defenses to Patout's Original, First, and Second Amending Petitions for Damages plus a Cross–Claim against Allen Patout and Underwriters at Lloyd's for contribution and/or indemnification for any judgment rendered

against it.  Patout filed an Exception of No Cause of Action and/or Motion to Strike Cross–Claim in response to Harbor Freight's Cross–Claim. The trial court denied the exception.

Patout argued that Harbor Freight did not have a cause of action recognized under Louisiana law for contribution or indemnity against its co-tortfeasors. Patout cited to La. Civ. Code art. 2324, which was amended in 1996 to eliminate solidary liability, making nonintentional tortious acts joint and divisible, with each joint tortfeasor liable only for its own degree of fault, except where tortfeasors conspire to commit an intentional or willful act.  Patout also argued that there had been no claims of any intentional or willful act made in this matter, nor is there an allegation of any indemnity agreement.

In response, Harbor Freight contended that it has a viable cause of action for contribution and indemnity, as any fault for Patout's accident stemmed from Allen Patout's negligence, not Harbor Freight's. The Petition for Damages and its Amendments allege that Mark Patout's injuries are a direct result of the negligence of Allen Patout and that Allen Patout had full and total control of the elevator and installed it.  Harbor Freight argued that under *Nassif v. Sunrise Homes, Inc.*, 98-3193 (La. 6/29/99), 739 So.2d 183, this was sufficient for a cause of action for contribution and indemnity.

The Third Circuit found that based upon the allegations made by Patout and Harbor Freight, Harbor Freight had a cause of action for contribution and/or indemnity. The Court also noted that it was possible that Allen Patout was at fault for the injuries suffered by Patout when the homemade elevator failed, considering Harbor Freight's allegation that the equipment it sold was used in a manner for which it was never intended.

Similarly, Harbor Freight asserted the complete fault of codefendant, Allen Patout, for his misuse of the automotive engine hoist. Based upon the allegations made by Patout, the Court

11

found that Harbor Freight had a cause of action for contribution and/or indemnity, because it is possible that Allen Patout misused, failed to properly install, or failed to comply with the warnings against using the automotive joist manufactured by Harbor Freight to lift people.

The Third Circuit cited to *Nassif*, 739 So.2d 183, when considering the indemnity claim:

> Indemnity in its most basic sense means reimbursement and may lie when one party discharges a liability which another rightfully should have assumed. It is based on the principle that everyone is responsible for his own wrongdoing, and if another person has been compelled to pay a judgment which ought to have been paid by the wrongdoer, then the loss should be shifted to the party whose negligence or tortious act caused the loss. The obligation to indemnify may be express, as in a contractual provision, or may be implied in law, even in the absence of an indemnity agreement. An implied contract of indemnity arises only where the liability of the person seeking indemnification is solely constructive or derivative and only against one who, because of his act, has caused such constructive liability to the imposed. *Id.* at 690 (Citations omitted).

Similarly, the Court noted that Harbor Freight had stated a cause of action discharging liability to Allen Patout. Harbour Freight argued that they were completely without fault; thus, the Court found that Harbor Freight may be due indemnity from Patout and denied Patout's application for supervisory writ.

Here, Nisus has asserted claims similar to those in Patout. For example, Nisus asserts that any damages to the Property and/or sprinkler system were caused by an unforeseen misuse of the Bora-Care® with Mold-Care® product by a third party, including contractors and/or subcontractors involved in the construction of the Project.[27] Additionally, Nisus asserts that the damages of which Allied complains were caused by the general contractor and its subcontractors

---

[27] R. Doc. 9, Eighteenth Defense, p. 17.

who ignored the warnings and/or installed or applied Bora-Care® with Mold-Care® to the CVPC pipe.[28]

Nisus' well-pleaded facts support Nisus' claim for implied immunity against Lemoine and Doster. These facts suggest that Nisus is plausibly without fault as it pertains to the negligent construction of the sprinkler system. Therefore, Nisus' Third-Party Complaint against Lemoine and Doster is appropriate, and their Motion to Dismiss must be denied.

### C. Under Louisiana Law, Nisus Has Asserted A Viable Claim in Negligence Against Lemoine and Doster.

Lemoine and Doster contend that Nisus has not pled sufficient facts to establish a claim in negligence against either Lemoine or Doster.

#### 1. Nisus Has Stated a Claim in Negligence.

Louisiana Civil Code Article 2315, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code. Art. 2315. Lemoine and Doster erroneously assert that Nisus' Third-Party Complaint fails to state a claim for negligence as Nisus cannot satisfy the five separate elements of a negligence claim: (1) duty; (2) breach; (3) cause-in-fact of the alleged injuries; (4) scope of liability or scope of protection element; and (5) damages.[29]

##### a) Duty

A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty and whether a duty is owed is a question of law. *Lemann v. Essen Lane Daiquiris, Inc*., 05-1095, p. 8 (La. 3/10/06), 923 So.2d 627, 633 (citations omitted). In determining whether one party

---

[28] *Id*., Twenty-Second Defense, p. 19.
[29] See R. Doc. 29-1 at pp. 11-13.

owed a duty to another, the court must make a case-by-case "policy decision in light of the unique facts and circumstances presented. The inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." *Id.* (internal citations omitted). A "'no duty' defense in a negligence case is seldom appropriate." *Zirnko v. Am. Cynamid*, 03-0658 (La. App. 4 Cir. 6/8/05), 905 So.2d 465 (quoting *Pitre v. La. Tech. Univ.*, 95-1466 (La. 5/10/96); 673 So.2d 585, 597 (Lemmon, J., concurring)). *See also, Cowan v. Jack*, 05-0175 (La. App. 4 Cir. 12/21/05), 922 So.2d 559, 569 (stating that "it generally is inappropriate to resolve negligent cases based on a legal finding of 'no duty'"). Here, specific duties owed by Lemoine and Doster to Nisus arise by operation of law, as provided in articles of the Louisiana Civil Code.

Nisus asserts that it has alleged sufficient facts for this Court to reasonably infer that Nisus has stated a negligence claim against Lemoine and Doster.  For example, Nisus asserts that Lemoine and Doster breached a duty in, *inter alia*,

    a.    Failing to take proper precautions while commissioning the installation of the fire suppression sprinkler system to ensure that it was properly installed and would not crack;

    b.    Failing to take proper precaution in the installation of the fire suppression sprinkler system to ensure that it was properly installed and would not crack;

    c.    Failing to perform its inspection of the fire suppression sprinkler system and its component parts in a reasonable, safe, and skillful manner;

    d.    Failing to install the fire suppression sprinkler system and its component parts in a good and workmanlike manner.

    e.    Negligently delegating, hiring, and/or supervising the workmanship and safety of the services delegated and/or subcontracted out;

f.  Negligently and improperly directing others in connection with the work on the fire suppression sprinkler system installed in the Project;

g.  Failing to comply with the safety standards in the industry when performing its work;

h.  Violating federal, state, and/or local ordinances, statutes, and/or codes in the manner in which it performed its work; and

i.  Failing to take all other reasonable precautions to prevent the injury and damage that resulted.[30]

**b) Breach, Cause in Fact, and Scope of Duty.**

Lemoine and Doster do not address the breach or cause in fact elements. Lemoine and Doster spend a single paragraph making conclusory allegations that Nisus failed to "allege any act substandard conduct by Lemoine or Doster."[31] Nisus submits that the allegations submitted above alleged substandard conduct by Lemoine and Doster and their motion must fail.

The standard for the Court's inquiry at this stage of the litigation is as follows:

"To survive a motion to dismiss, a complaint must contain *sufficient* factual matter, *accepted as true,* to 'state a claim to relief that is *plausible on its face.*' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), *quoting Twombly,* 550 U.S. at 570, 127, S.Ct. 1955, 167 L.Ed.2d 929) (emphasis added). Thus, pursuant to a 12(b)(6) inquiry, the Court is addressing the *sufficiency* of the facts plead, not their truth or the ultimate substantive application of those facts, and therefore, looks to whether the facts are "*well pleaded* " rather than to resolve the disputes or possible arguments suggested by or surrounding those facts. The jurisprudence instructs the nature of such an inquiry should look to whether a claim has facial plausibility where the pled facts allow a court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949.

---

[30] R. Doc. 9, ¶¶XXXII and XXXVII.
[31] R. Doc. 29-1, p. 13.

Here, Nisus submits that the Court can conclude that its Third-Party Complaint contains sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face" for negligence against Lemoine and Doster and their Motion to Dismiss should be denied.

## IV. THIS HONORABLE COURT HAS DENIED THIRD-PARTY DEFENDANT MOTIONS TO DISMISS.

This Court has a history of denying third-party defendant Motions to Dismiss.

In *Buratt v. Red Frog Events, LLC*, No. 17-100, 2017 WL 5147156 (M.D. La. 2017) (Brady, J.), plaintiffs filed a Petition arising out of injuries allegedly sustained during a Warrior Dash event in St. Francisville, Louisiana, asserting claims of negligence, gross negligence, and loss of consortium against Red Frog Events, LLC ("Red Frog") and Nationwide Mutual Insurance Company.  Red Frog removed the action to the Middle District of Louisiana. Plaintiffs submitted an Amended Complaint for Damages naming as defendants: Red Frog, Peterson Builders Framing Contractors ("Peterson"), and two additional insurers.  Peterson filed its Answer, Affirmative Defenses and Third-Party Demand for indemnity against third-party defendant, North South Renovations, Inc.'s ("NSR").  NSR sought dismissal of Peterson's claim on Rule 12(b)(6) grounds.

Peterson, in its Answer and Third-Party Demand, denied its liability stating that "Plaintiffs suffered the alleged injuries and/or losses as a result of the negligence of a party, individual, or entity other than [Peterson]." Peterson claimed that in April 2016, it entered into a contract with Red Frog "to provide construction, oversight maintenance and removal services of obstacles" at several Warrior Dash events.  According to Peterson, its role was "limited to executing the contract and providing the funds to NSR, and at no time did Peterson perform or supervise any of the work under the contract, including but not limited to constructing the Diesel Dome." Peterson asserts that "NSR, or another company who contracted with NSR, performed

all construction, oversight, maintenance, and removal services pursuant to the Agreement." Peterson claimed that NSR was responsible to the extent that Plaintiffs' alleged damages were caused by negligent construction and consequently "NSR is liable to Peterson for all or part of the demand asserted by Plaintiffs against Peterson" in the main demand.

Judge Brady found that Peterson had sufficiently pled a third-party demand against NSR. Peterson had denied any wrongdoing in the case and had alleged that any liability it may have was only technical and a result of the negligent construction and servicing performed by NSR on the Diesel Dome"  Judge Brady also noted that third-party plaintiff, Peterson, alleged that the third-party defendant, NSR, "performed all construction, oversight, maintenance, and removal services pursuant to the Agreement," and NSR should be responsible for its fault. *Id.*

Judge Brady further noted that, "[A]t this stage of litigation, we are only concerned with whether Peterson has alleged sufficient facts to state a plausible third-party claim for indemnity."  The Court found that it had.  Finally, Judge Brady noted that whether Peterson was actually liable to Plaintiffs, so as to preclude success on its indemnity claim against NSR, required factual findings that cannot be made at the 12(b)(6) stage.

In a similar case, in *Thibodeaux v. Red Frog Events, LLC, et al.*, No. 17-00695, 2018 WL 4373753 (M.D. La. 09/13/2018) (BAJ-EWD), these consolidated cases also arose out of injuries allegedly sustained when the Diesel Dome collapsed during the Warrior Dash event.  In response to Plaintiff's suits, Red Frog filed its Answer and Third-Party Demand for indemnity against Daniel Lauber ("Lauber") "for any and all damages that relate to negligent construction, failure to repair, and/or failure to warn participants of any alleged defect in the Diesel Dome.  (R. Doc. 24 at ¶26.).  Lauber is the individual who allegedly constructed the Diesel Dome.

According to Red Frog, Lauber failed to follow Red Frog's diagram and specifications when constructing the obstacle and in turn was responsible for any damages arising out of the incident." (*Id.* at ¶71).  Lauber sought dismissal of Red Frog's claim on Rule 12(b)(6) grounds arguing that Red Flag had failed to state a claim for indemnification because there was no basis for contractual or implied indemnity. (R. Doc. 70 at pp.6-7).  Lauber also claimed that under Louisiana's pure comparative fault doctrine, under which a party is liable only for degrees of fault, Red Frog would only be liable for fault directly attributable to it, which means there was no need for implied indemnity. R. (Doc. 83 at pp. 2-4).

In its Opposition, Red Frog argued that it stated sufficient facts to show that Lauber should bear any damage that Red Frog may suffer because of the Diesel Dome's defective construction, inspection, maintenance, and repair. (R. Doc. 81 at p. 5).  Red Frog also argued that its third-party demand could proceed because its allegations against Lauber track Plaintiff's allegations against Red Frog and because Lauber is responsible for the alleged torts claim asserted by Plaintiff. (R. Doc. 89 at pp. 1-2).

Like the *Buratt* Court, this Court found that whether Lauber was actually liable to Red Frog "requires factual findings that cannot be made at the Rule 12(b)(6) stage," Buratt, 2017 WL 5147156 at *2-3, and thus, denied Laubert's motion to dismiss.

## V.  IN THE ALTERNATIVE, IF THE COURT FINDS THE THIRD-PARTY COMPLAINT INSUFFICIENT, NISUS SHOULD BE GRANTED LEAVE TO AMEND.

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955) (quotations and citations omitted). The Fifth Circuit has further stated:

In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co*., 313 F.3d 305, 329 (5th Cir. 2002).

One leading treatise has further explained:

As the numerous case[s] ... make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

Nisus believes that its Third-Party Complaint contains sufficient allegations to state a claim. If this Court should find otherwise, however, Nisus requests leave to amend its Third-Party Complaint. Federal Rule of Civil Procedure 15(a)(2) provides that, upon a party's request for leave to further amend its complaint, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. Proc. 15(a)(2). Further, an "outright refusal to grant leave to amend without a justification such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.' is considered an abuse

of discretion." *U.S. ex rel Adrian v. Regents of Univ. of California*, 363 F.3d 398, 403 (5th Cir. 2004) *citing Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.ED.2d 222 (1962); *U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc*., 336 F.3d 375, 386 (5th Cir. 2003)). Lastly, the Fifth Circuit has noted that, although leave to amend is not automatic, "*if the district court lacks a substantial reason to deny leave, its discretion is not broad enough to permit denial*." *Wimm v. Jack Eckerd Corp*., 3 F.3d 137, 139 (5th Cir. 1993).

Nisus submits that, if this Court should find Nisus' Third-Party Complaint deficient under Rule 12(b) (6), there would be no sufficient reason to deny leave to amend.  Therefore, Nisus respectfully prays for leave to amend should the Court deem its Third-Party Complaint deficient.

**VI. CONCLUSION:**

The fundamental premise of Louisiana tort law is that a person who causes damage through its own fault is obligated to repair it.  Nisus has made sufficient allegations to claim plausibly that Lemoine and Doster are liable to Nisus for damages caused by their operations in the construction of the Project, including the installation of the sprinkler system at issue.  Nisus submits that, at this stage of the litigation, where its allegations are accepted as true, it should be allowed to proceed with its claims against Lemoine and Doster.  Nisus requests, accordingly, that this Court deny Lemoine and Doster's 12(b)(6) motion.  Alternatively, Nisus requests and prays for leave to amend should this Court find otherwise.

WHEREFORE, Nisus Corporation prays that The Lemoine Company, LLC and Doster Construction Company, Inc.'s Motion to Dismiss Nisus Corporation's Third-Party Claims pursuant to Fed. R. Civ. P. 12(b)(6) [Rec. Doc. 29] be denied.

Respectfully Submitted:

/s/ *Kristopher M. Redmann*

20

Seth A. Schmeeckle, Bar No. 27076
Kristopher M. Redmann, Bar No. 23978 (T.A.)
Gregory P. Aycock, Bar No. 26177 (T.A.)
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: 504-568-1990
Facsimile: 504-310-9195
Email:  sschmeeckle@lawla.com
              kredmann@lawla.com
              greg@lawla.com

**Attorneys for Defendant, Nisus Corporation**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing pleading was electronically filed with the Clerk of Court through the CM/ECF system and all registered counsel were electronically notified and all non-CM/ECF participants were otherwise served by electronic transmission, facsimile transmission and/or by U.S. Mail, properly addressed and postage prepaid this 2nd day of December, 2021.

*/s/ Kristopher M. Redmann*