IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ALLIED WORLD NATIONAL ASSURANCE COMPANY | * * * | CIVIL NO. 3:21-cv-00431-BAJ-EWD |
| Plaintiff, | * * | JUDGE BRIAN A. JACKSON |
| VERSUS | * * | |
| | * | MAG. JUDGE ERIN WILDER-DOOMES |
| NISUS CORPORATION and SPEARS MANUFACTURING COMPANY | * * * | |
| Defendants. | * * | |

**************************************

## MEMORANDUM IN OPPOSITION TO THE LEMOINE COMPANY, LLC'S AND DOSTER CONSTRUCTION COMPANY, INC.'S MOTION TO DISMISS NISUS CORPORATION'S THIRD-PARTY COMPLAINT

Third-Party Complainant, Nisus Corporation ("Nisus"), provides this Memorandum in Opposition to Niles Bolton Associates, Inc.'s ("NBA") 12(b)(6) Motion to Dismiss:

**I. SUMMARY OF ARGUMENT:**

NBA's Motion to Dismiss should be denied because Nisus' Third-Party Complaint states a plausible claim for relief for implied indemnity from NBA under Louisiana law. Primary plaintiff, Allied World National Assurance Company ("Allied"), has asserted a products liability claim against Nisus alleging that it suffered damages resulting from Nisus' product, Bora-Care® with Mold-Care®, that was allegedly used during the construction of the Nicholson Gateway Project (the "Project").

Nisus' well-pleaded facts and affirmative defenses[1] state a plausible claim for indemnity from NBA under Louisiana law. Nisus' Third-Party Complaint suggests that NBA caused the

---

[1] An affirmative defense is generally defined as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true." Black's Law Dictionary 451 (8th

1

same damage for which Allied seeks to hold Nisus liable, namely, the alleged incompatibility between the products used in the installation of the fire suppression sprinkler system ("sprinkler system"), which caused the leaks and damages sued upon. Further, any damages alleged or otherwise sustained by Allied were caused by the unforeseen misuse of Nisus' product, which was allegedly used by Lemoine, Doster, and the subcontractors it retained to construct the Project.

Nisus has denied any wrongdoing associated with construction of the Project. Further, Nisus asserts that any fault attributed to Nisus was constructive, considering Nisus was not involved in construction, nor exercised operational control over the activities, work, premises, or equipment used to construct the Project.

Implied indemnity is justified to prevent NBA, the architect for the Project, from not having to pay Nisus for any alleged damages that Nisus may be called upon to pay unto Allied if Allied is successful in its action. Therefore, Nisus' Third-Party Complaint against NBA is appropriate and NBA's Motion to Dismiss should be denied.

## II. BACKGROUND

This action arises out of the Project, a 28-acre mixed use development consisting of student apartment housing, retail, university recreation space, and surface and structured parking located along Nicholson Drive on the Louisiana State University ("LSU") campus.[2] The apartment housing complex consists of student apartments in five buildings named Canal, Delta,

---

ed. 2004). Finally, by definition, an affirmative defense raises a new matter or issue that will defeat the plaintiff's claim on the merits, even assuming that claim is valid and that the allegations of the petition are true. *See Webster v. Rushing*, 316 So.2d 111, 114 (La. 1975); *Fishbein v. State ex rel. LSU Health Sciences Ctr.*, 06-0549, p. 6 (La. App. 1 Cir. 3/9/07), 960 So.2d 67, 71-2, *writs denied*, 07-0730 (La. 6/22/07), 959 So.2d 495, and 07-0708 (La. 6/22/07), 959 So.2d 505. Implicit in that definition is the conclusion that a defendant is not required to raise an issue as an affirmative defense if it does not raise a "new matter." *Fishbein*, 06-0549 at p.6, 960 So.2d at 72. The purpose of pleading a special defense is to give fair and adequate notice of the nature of the defense so that the plaintiff is not surprised. *Webster*, 316 So.2d at 114.

[2] R. Doc. 9, ¶VII.

Gulf, Marsh, and Oxbow.[3] The Project began as a public-private partnership between LSU, the LSU Property Foundation, Rise Tigers, LLC ("Rise"), and Provident Resources Group, Inc. ("Provident"), to design, build, finance, operate, and maintain student apartment housing at the Project.[4] LSU partnered with Provident and Rise to undertake the first phase of the development. Provident financed the design and construction of the apartment housing complex and Rise served as the developer for the Project.[5]

NBA was hired to serve as the architect to design the Project, and their duties included, but were not limited to, designing the sprinkler system for the apartment buildings and preparing and approving construction materials for the Project.[6]

On August 8, 2016, Rise entered into an Initial Construction Services Agreement with Lemoine.[7] Thereafter, on September 1, 2016, Rise and Lemoine entered into a contract for Lemoine to act as the general contractor for the construction of the Project, which included the five apartment buildings.[8] On that same day, Lemoine entered into a written contract with Doster for Doster to construct a substantial portion of the work required by Lemoine's contract with Rise.[9]

The apartment buildings were designed and outfitted with a sprinkler system comprised of FlameGuard® chlorinated polyvinyl chloride ("CPVC") pipe manufactured by Spears Manufacturing, Inc. ("Spears").[10] The CPVC pipe was run throughout the apartment buildings in the hallways, corridors, and throughout the individual apartments and common areas.[11]

---

[3] *Id*. at ¶VIII.
[4] *Id*. at ¶IX.
[5] *Id*. at ¶¶X and XI.
[6] *Id*. at ¶XII.
[7] *Id*. at ¶XIII.
[8] *Id*. at ¶XIV.
[9] *Id*. at ¶XV.
[10] *Id*. at ¶XVI.
[11] *Id*. at ¶XVII.

Construction on the Project was substantially completed on June 25, 2018.[12] Sometime after substantial completion, a leak was noticed in the sprinkler system in one of the Project's apartment buildings.[13] Thereafter, additional leaks were discovered in another building.[14]

On July 23, 2021, Allied filed its Complaint asserting a products liability claim against Nisus. Nisus is the alleged manufacturer of Bora-Care® with Mold-Care®, a moldicide spray, which Allied claims was used at some point during construction of the Project to prevent the growth of mold and mildew on the interior walls.[15] On September 27, 2021, Nisus filed its Answer and Affirmative Defenses to Allied's Complaint and a Third-Party Complaint against NBA, Lemoine, and Doster.

To the extent there was any negligence,[16] Nisus alleges NBA was negligent and breached its standard of care in: (1) failing to properly design the sprinkler system; (2) designing and specifying improper, inadequate, or in appropriate materials; (3) approving improper, inadequate, or inappropriate materials; (4) failing to provide known information related to compatibility of products; (5) failing to provide services consistent with Project requirements, (6) negligent preparation and design of plans and specifications; and (7) breach of the applicable standard of care in its design administrative services.[17]

Nisus has also asserted numerous affirmative defenses that support its claim against NBA, namely:

- The damages of which Plaintiff complains were caused by or the result of superseding actions of independent third parties, third persons, contractors, and/or subcontractors for which Nisus has no responsibility, or by intervening

---

[12] *Id.* at ¶XXII.
[13] *Id.* at ¶XXIII.
[14] *Id.* at ¶XXIV.
[15] R. Doc. 1, ¶¶20-21.
[16] Nisus disputes that any negligence or products liability occurred, but to the extent there is any liability, or that there was any inconsistency between various products, it is NBA that is at fault and liable.
[17] R. Doc. 9, ¶¶XXVIII.

> events, factors, circumstances, occurrences or conditions that were in no way caused or contributed to by Nisus, and over which Nisus had no control. This includes but is not limited to the general contractors and its subcontractors who ignored warnings and/or approved the application of Bora-Care with Mold Care® on CPVC pipe used as parts of the fire suppression sprinkler system. These intervening, superseding causes relieve Nisus of any liability.[18]

- The damages of which Plaintiff complains were caused by the negligence or fault of independent third parties, third persons, or organizations including, but not limited to, the general contractor and its subcontractors who ignored the warning and/or installed or applied Bora-Care® with Mold Care® to CPVC pipe, and other manufacturers who manufactured sealant, caulk, paint, or other construction materials that were applied to any of the CPVC pipe.[19]

- Nisus pleads that it cannot be liable or responsible for any actions, negligence, fault, breach of contract, and/or liability of, or offenses committed by any general contractor, subcontractors, independent contractors, or third persons such that any claims by the Plaintiff against Nisus should be dismissed with prejudice.[20]

Nisus has prayed for judgment against NBA plus other equitable and legal relief as the Court may deem just and proper.[21]

**III. LAW AND ARGUMENT:**

  **A. Legal Standard.**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 622, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a

---

[18] *Id*. at Twenty-First Defense, p. 18.
[19] *Id*. at Twenty-Second Defense, p. 19.
[20] *Id*. at Twenty-Seventh Defense, p. 20.
[21] *Id*. at ¶XXXIX(b).

5

plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

"[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of the cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court "accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc*., 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

### B. NBA Owes Nisus Implied Indemnity.

NBA asserts that Nisus' Third-Party Complaint improperly attempts to assert comparative fault defenses as third-party claims and that Nisus is incapable of stating a claim for implied indemnity against NBA because Nisus does not seek indemnity, does not allege contractual privity, nor allege a factual or legal basis under which NBA would be held liable to Nisus for any damages.

Here, the Court shall consider whether Nisus has plausibly alleged that it is entitled to indemnity from NBA under Louisiana law. Implied indemnity is rooted in the civilian concept of restitution:

> Indemnity in its most basic sense means reimbursement, and may lie when one party discharges a liability which another rightfully should have assumed. **It is based on the principle that everyone is responsible for his own wrongdoing.**

*Nassif v. Sunrise Homes, Inc.*, 98-3193 (La. 6/29/99); 739 So.2d 183, 185 (emphasis added); *Martco Ltd. Partnership v. Bruks Inc.*, 430 Fed. Appx. 332, 337 (5th Cir. 2011); *Buratt v. Red*

*Frog Events, LLC*, 2017 U.S. Dist. LEXIS 184301, p. 6 (M.D. La. 11/6/17). A third-party plaintiff successfully establishes a claim for implied indemnity by pleading sufficient facts that suggest that third-party defendant "caused or contributed to the same damages for which" the primary plaintiff seeks to hold third-party plaintiff liable. *JAH Enterprises*, 2017 U.S. Dist. LEXIS at pp. 16-17 *accord* FED. R. CIV. P. 14(a)(1).

"Indemnity 'is based on the principle that everyone is responsible for his own wrongdoing, and if another person has been compelled to pay a judgment which ought to have been paid by the wrongdoer, then the loss should be shifted to the party whose negligence or tortious act caused the loss.' " *Martco Ltd. P'ship v. Bruks Inc.*, 430 Fed. App'x 332, 335 (5th Cir. 2011) (quoting *Nassif*, 739 So. 3d at 185); *see also* La. Civ. Code. art. 2315. Indemnity "finds its basis in the concept of unjust enrichment, *i.e.*, the party primarily at fault is unjustly enriched when one held liable . . . by reason of technical fault discharges the indebtedness." *Martco*, 430 Fed. App'x at 335 (quoting *Mayo*, 717 So. 2d at 1249); *see also Bewley Furniture*, 285 So. 2d at 219-20.

This case is no different from *Martco*, in which the Fifth Circuit analyzed a motion to dismiss a tort indemnity claim by Bruks against Mid-South. There, Bruks, an equipment manufacturer, contracted with Martco to produce equipment for Martco's plant. 430 Fed. App'x at 333-34. Martco then contracted with Mid-South to develop the designs for the equipment to be manufactured by Bruks. *Id*. When Martco sued Bruks for redhibition, breach of contract, detrimental reliance, and negligence in connection with the manufacture and delivery of equipment that did not perform to Martco's expectations, Bruks filed a third-party complaint against Mid-South for "tort indemnity." *Id*. Mid-South moved to dismiss Bruks's third-party complaint under Rule 12(b)(6). *Id*. at 334.

7

The Fifth Circuit held that dismissal of the tort indemnity claim was inappropriate under *Iqbal/Twombly*. While concluding that Mid-South may eventually succeed in showing no right to indemnity, the Fifth Circuit held that Bruks had sufficiently pleaded non-fault on its part and exclusive fault on the part of Mid-South, and thus Bruks's claim was sufficient to withstand the motion to dismiss. *Id*. at 338. The Fifth Circuit explained that, "[h]ere, Bruks has denied any wrongdoing in this case and has alleged that any liability that it may have is only technical and a *result of the faulty and untimely specifications, designs and other information provided by Mid-South upon which Bruks wholly relied* in manufacturing the allegedly defective equipment for Martco." *Id*. at 337-38 (emphasis added). Holding that the right to tort indemnity extends beyond a contractor-subcontractor or employer-employee-type relationship, the Fifth Circuit relied on the "moral maxim that 'no one ought to enrich himself at the expense of another' " to conclude that Bruks had stated a plausible basis for indemnity. *Id*.

At the Motion to Dismiss stage, the issue is not whether Nisus will succeed on its indemnity claim, but rather whether Nisus has pleaded the claim. *Id*. at 338. Nisus' third-party claim against NBA squarely fits within the scope of such an indemnity claim. As alleged, Nisus claims, *inter alia*, that to the extent there was any negligence, NBA was negligent and breached its standard of care in failing to properly design the sprinkler system, approved improper, inadequate, or inappropriate materials, and failed to provide known information related to compatibility of products.[22] Nisus' Third-Party Complaint suggests that NBA's actions in designing the sprinkler system for the apartment buildings and preparing and approving construction materials for the Project caused the same damage for which Allied seeks to hold

---

[22] Nisus disputes that any negligence or products liability occurred, but to the extent there is any liability, or that there was any inconsistency between various products, it is NBA that is at fault and liable.

8

Nisus liable, namely, the incompatibility between the products used in the installation of the sprinkler system. NBA's motion to dismiss should be denied.

### C. Under Louisiana Law, Nisus Has Asserted A Viable Claim in Negligence Against NBA.

NBA contends that Nisus does not allege contractual privity, nor allege a factual or legal basis under which NBA could be held liable to Nisus for any damages.

As there is no privity of contract, Nisus has a viable claim in negligence against NBA. In support thereof, Nisus cites to *Gurtler, Hebert and Company, Inc. v. Weyland Machine Shop, Inc.*, 405 So.2d 660 (La. App 4th Cir. 1981) for the proposition that a third-party lacking privity of contract has a cause of action in tort against an architect.

In *Gurtler*, a subcontractor – as a third-party plaintiff – asserted a claim against an architect with whom the subcontractor had no privity of contract, and the architect responded with an exception of no right of action. The Louisiana Fourth Circuit Court of Appeals framed the issue presented as "whether a subcontractor made defendant in a suit by the contractor for breach of contract can assert in third-party demand a cause of action in tort against the architect where no privity of contract exists between the architect and his subcontractor." *Gurtler*, 405 So.2d at 662. Addressing this issue, the Fourth Circuit noted:

> "Where the damage sued for is the defectively performed work itself, the action is strictly a contractual one and only those who are in privity with the contractor have an action against him. However, where the damage sued for is not the defective work but is instead damage caused by the defective work, a tort action against the contractor is proper when the elements for delictual recovery are present."

*Id.* (quoting *Lumber Products, Inc. v. Hiriart*, 255 So.2d 783 (La. App. 4th Cir. 1972)); *see also, Standard Roofing Company of New Orleans v. Elliot Construction Co., Inc.*, 535 So.2d 870, 880 (La.

App. 1 Cir. 1988)(citing *Gurtler* and noting that "[s]uch an action arises when there is a breach of a duty owed independently of the contract between the owner and architect.").

In *Gurtler*, the subcontractor alleged that "the architect failed to provide adequate plans and specifications, to act reasonably in approving or rejecting the shop or detailed drawings submitted by Weyland [the subcontractor] and to notify timely other sub-contractors and suppliers 'of decisions solely within its discretion,' leading to delays and cost overruns." 405 So.2d at 662. Based on a review of the allegations of the petition, the Court concluded that the subcontractor had asserted a cause of action in tort and thus had a right of action against the architect.

In *Standard Roofing Company of New Orleans v. Elliot Construction Company, Inc.*, 535 So.2d 870 (La. App. 1 Cir 1988), *writs denied*, 537 So.2d 1166, 1167 (La. 1989), the Louisiana First Circuit recognized that a design professional (i.e., architect),

> may be subject to an action in tort brought by [a subcontractor] even in the absence of any privity of contract. Such an action arises when there is a breach of a duty owed independently of the contract between the owner and architect. An architect is deemed to know that his services are for the protection of the owner's interest, as well as the protection of other third parties who have no supervisory power whatsoever and must rely on the architect's expertise in providing adequate supervision, plans, and specifications. *Standard*, 535 So.2d at 880 (citations omitted).

Louisiana Civil Code Article 2315, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code. Art. 2315. Nisus alleged sufficient facts for this Court to reasonably infer that Nisus has stated a negligence claim against NBA. For example, Nisus asserts that NBA breached its standard of care as an architect in, *inter alia*,

    a.    Failing to properly design the sprinkler system;

    b.    Designing and specifying improper, inadequate, or inappropriate materials;

10

    c.    Approving improper, inadequate, or inappropriate materials;

    d.    Breach of the applicable standard of care by failing to provide proper plans, specifications, and contract documents within those ordinarily encountered in the region;

    e.    Failing to provide known information related to compatibility of products;

    f.    Failing to provide services consistent with Project requirements;

    g.    Negligent preparation and design of plans and specifications; and

    h.    Breach of the applicable standard of care in its design administrative services. [23]

The standard for the Court's inquiry at this stage of the litigation is as follows:

> "To survive a motion to dismiss, a complaint must contain *sufficient* factual matter, *accepted as true,* to 'state a claim to relief that is *plausible on its face.*' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), *quoting Twombly,* 550 U.S. at 570, 127, S.Ct. 1955, 167 L.Ed.2d 929) (emphasis added). Thus, pursuant to a 12(b)(6) inquiry, the Court is addressing the *sufficiency* of the facts plead, not their truth or the ultimate substantive application of those facts, and therefore, looks to whether the facts are "*well pleaded* " rather than to resolve the disputes or possible arguments suggested by or surrounding those facts. The jurisprudence instructs the nature of such an inquiry should look to whether a claim has facial plausibility where the pled facts allow a court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1949.

---

[23] R. Doc. 9, ¶¶XXXVII.

Here, Nisus submits that the Court can conclude that its Third-Party Complaint contains sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face" for negligence against NBA and its Motion to Dismiss should be denied.

### IV. THIS HONORABLE COURT HAS DENIED THIRD-PARTY DEFENDANT MOTIONS TO DISMISS.

This Court has a history of denying third-party defendant Motions to Dismiss.

In *Buratt v. Red Frog Events, LLC*, No. 17-100, 2017 WL 5147156 (M.D. La. 2017) (Brady, J.), plaintiffs filed a Petition arising out of injuries allegedly sustained during a Warrior Dash event in St. Francisville, Louisiana, asserting claims of negligence, gross negligence, and loss of consortium against Red Frog Events, LLC ("Red Frog") and Nationwide Mutual Insurance Company. Red Frog removed the action to the Middle District of Louisiana. Plaintiffs submitted an Amended Complaint for Damages naming as defendants: Red Frog, Peterson Builders Framing Contractors ("Peterson"), and two additional insurers. Peterson filed its Answer, Affirmative Defenses and Third-Party Demand for indemnity against third-party defendant, North South Renovations, Inc.'s ("NSR"). NSR sought dismissal of Peterson's claim on Rule 12(b)(6) grounds.

Peterson, in its Answer and Third-Party Demand, denied its liability stating that "Plaintiffs suffered the alleged injuries and/or losses as a result of the negligence of a party, individual, or entity other than [Peterson]." Peterson claimed that in April 2016, it entered into a contract with Red Frog "to provide construction, oversight maintenance and removal services of obstacles" at several Warrior Dash events. According to Peterson, its role was "limited to executing the contract and providing the funds to NSR, and at no time did Peterson perform or supervise any of the work under the contract, including but not limited to constructing the Diesel Dome." Peterson asserts that "NSR, or another company who contracted with NSR, performed

12

all construction, oversight, maintenance, and removal services pursuant to the Agreement." Peterson claimed that NSR was responsible to the extent that Plaintiffs' alleged damages were caused by negligent construction and consequently "NSR is liable to Peterson for all or part of the demand asserted by Plaintiffs against Peterson" in the main demand.

Judge Brady found that Peterson had sufficiently pled a third-party demand against NSR. Peterson had denied any wrongdoing in the case and had alleged that any liability it may have was only technical and a result of the negligent construction and servicing performed by NSR on the Diesel Dome." Judge Brady also noted that third-party plaintiff, Peterson, alleged that the third-party defendant, NSR, "performed all construction, oversight, maintenance, and removal services pursuant to the Agreement," and NSR should be responsible for its fault. *Id*.
Judge Brady further noted that, "[A]t this stage of litigation, we are only concerned with whether Peterson has alleged sufficient facts to state a plausible third-party claim for indemnity." The Court found that it had. Finally, Judge Brady noted that whether Peterson was actually liable to Plaintiffs, so as to preclude success on its indemnity claim against NSR, required factual findings that cannot be made at the 12(b)(6) stage.

In a similar case, in *Thibodeaux v. Red Frog Events, LLC, et al*., No. 17-00695, 2018 WL 4373753 (M.D. La. 09/13/2018) (BAJ-EWD), these consolidated cases also arose out of injuries allegedly sustained when the Diesel Dome collapsed during the Warrior Dash event. In response to Plaintiff's suits, Red Frog filed its Answer and Third-Party Demand for indemnity against Daniel Lauber ("Lauber") "for any and all damages that relate to negligent construction, failure to repair, and/or failure to warn participants of any alleged defect in the Diesel Dome. (R. Doc. 24 at ¶26.). Lauber is the individual who allegedly constructed the Diesel Dome.

According to Red Frog, Lauber failed to follow Red Frog's diagram and specifications when constructing the obstacle and in turn was responsible for any damages arising out of the incident." (*Id.* at ¶71). Lauber sought dismissal of Red Frog's claim on Rule 12(b)(6) grounds arguing that Red Flag had failed to state a claim for indemnification because there was no basis for contractual or implied indemnity. (R. Doc. 70 at pp.6-7). Lauber also claimed that under Louisiana's pure comparative fault doctrine, under which a party is liable only for degrees of fault, Red Frog would only be liable for fault directly attributable to it, which means there was no need for implied indemnity. R. (Doc. 83 at pp. 2-4).

In its Opposition, Red Frog argued that it stated sufficient facts to show that Lauber should bear any damage that Red Frog may suffer because of the Diesel Dome's defective construction, inspection, maintenance, and repair. (R. Doc. 81 at p. 5). Red Frog also argued that its third-party demand could proceed because its allegations against Lauber track Plaintiff's allegations against Red Frog and because Lauber is responsible for the alleged torts claim asserted by Plaintiff. (R. Doc. 89 at pp. 1-2).

Like the *Buratt* Court, this Court found that whether Lauber was actually liable to Red Frog "requires factual findings that cannot be made at the Rule 12(b)(6) stage," Buratt, 2017 WL 5147156 at *2-3, and thus, denied Laubert's motion to dismiss.

### V.  IN THE ALTERNATIVE, IF THE COURT FINDS THE THIRD-PARTY COMPLAINT INSUFFICIENT, NISUS SHOULD BE GRANTED LEAVE TO AMEND.

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955) (quotations and citations omitted). The Fifth Circuit has further stated:

14

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

One leading treatise has further explained:

> As the numerous case[s] ... make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

Nisus believes that its Third-Party Complaint contains sufficient allegations to state a claim. If this Court should find otherwise, however, Nisus requests leave to amend its Third-Party Complaint. Federal Rule of Civil Procedure 15(a)(2) provides that, upon a party's request for leave to further amend its complaint, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. Proc. 15(a)(2). Further, an "outright refusal to grant leave to amend without a justification such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.' is considered an abuse

15

of discretion." *U.S. ex rel Adrian v. Regents of Univ. of California*, 363 F.3d 398, 403 (5th Cir. 2004) *citing Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.ED.2d 222 (1962); *U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 386 (5th Cir. 2003)). Lastly, the Fifth Circuit has noted that, although leave to amend is not automatic, "*if the district court lacks a substantial reason to deny leave, its discretion is not broad enough to permit denial.*" *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

Nisus submits that, if this Court should find Nisus' Third-Party Complaint deficient under Rule 12(b)(6), there would be no sufficient reason to deny leave to amend. Therefore, Nisus respectfully prays for leave to amend should the Court deem its Third-Party Complaint deficient.

**VI. CONCLUSION:**

The fundamental premise of Louisiana tort law is that a person who causes damage through its own fault is obligated to repair it. Nisus has made sufficient allegations to claim plausibly that NBA is liable to Nisus for damages caused by their failing to provide known information related to compatibility of products and the negligent preparation of the design plans and specifications for the Project.

Nisus submits that, at this stage of the litigation, where its allegations are accepted as true, it should be allowed to proceed with its claims against NBA. Nisus requests, accordingly, that this Court deny NBA's 12(b)(6) motion. Alternatively, Nisus requests and prays for leave to amend should this Court find otherwise.

WHEREFORE, Nisus Corporation prays that NBA's Motion to Dismiss Nisus Corporation's Third-Party Claims pursuant to Fed. R. Civ. P. 12(b)(6) [Rec. Doc. 33] be denied.

    Respectfully Submitted:

    /s/ *Kristopher M. Redmann*
    Seth A. Schmeeckle, Bar No. 27076

>Kristopher M. Redmann, Bar No. 23978 (T.A.)
>Gregory P. Aycock, Bar No. 26177 (T.A.)
>Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
>601 Poydras Street, Suite 2775
>New Orleans, LA 70130
>Telephone: 504-568-1990
>Facsimile: 504-310-9195
>Email: sschmeeckle@lawla.com
>   kredmann@lawla.com
>   greg@lawla.com
>
>**Attorneys for Defendant, Nisus Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading was electronically filed with the Clerk of Court through the CM/ECF system and all registered counsel were electronically notified and all non-CM/ECF participants were otherwise served by electronic transmission, facsimile transmission and/or by U.S. Mail, properly addressed and postage prepaid this <u>3rd</u> day of January, 2022.

>*/s/ Kristopher M. Redmann*