UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ALLIED WORLD NATIONAL ASSURANCE COMPANY | CIVIL ACTION |
| VERSUS | |
| NISUS CORPORATION, ET AL. | NO. 21-00431-BAJ-EWD |

RULING AND ORDER

Before the Court is Third-Party Defendant Westchester Surplus Lines Insurance Company's ("Westchester") **Motion to Dismiss Third-Party Complaints Pursuant to Rule 12(b)(6) (Doc. 176)**, seeking dismissal of all demands set forth in the Third-Party Complaints of Defendants and Third-Party Plaintiffs Spears Manufacturing Company ("Spears") and Nisus Corporation ("Nisus"). For the following reasons, Westchester's Motion will be denied.

I. BACKGROUND

As set forth in this Court's prior Orders (Docs. 64, 72, & 103), this products liability, negligence, and insurance dispute arises from the construction of a 28-acre mixed use housing development on Louisiana State University's campus ("the Project"). Third-Party Defendant The Lemoine Company, LLC ("Lemoine") served as the Projects General Contractor.

Most relevant here, the Project was insured by an Owner Controlled Insurance Program ("OCIP"), under which "the coverages and limits were shared by all eligible parties who enrolled as OCIP Participants." (*See* Doc. 113, ¶ 52). Westchester issued

1

the OCIP's primary layer of commercial general liability coverage (the "Westchester Policy"), which featured a $2,000,000 limit per occurrence, a $4,000,000 aggregate limit, and a $25,000 deductible. (*See id.*, ¶ 53). Plaintiff Allied World National Assurance Company ("Allied") issued the Following Form Excess Policy (the "Allied Policy"). (*See id.*, ¶ 54).

After the Project was substantially complete, sprinkler leaks were discovered in some of the newly-constructed buildings. (*See* Doc. 113, ¶ 6). Allegedly, the leaks occurred because the chlorinated polyvinyl chloride pipes manufactured by Spears came into contact with Bora-Care with Mold-Care spray manufactured by Nisus, an "incompatible" combination. (*See id.*, ¶¶ 17, 19, 23, 35).

On or around December 28, 2020, Lemoine submitted an insurance claim for damage caused by the sprinkler leaks. (*See id.*, ¶¶ 11, 55). "Westchester and Allied determined that their respective layers of insurance provided coverage for the claim." (*See id.*, ¶ 58). Westchester paid the $2,000,000 occurrence limit, minus a $25,000 deductible, and Allied made an interim payment of $950,000 before settling a portion of the claim for $1,661,131. (*See id.*, ¶ 64, 66). Allied also pledged to pay $6,237,497 in future repair costs and will be subrogated to the Project owner's rights for such payment. (*See id.*, ¶¶ 68–70).

Seeking to recover its payments under the Allied Policy, on July 23, 2021, Allied initiated this action against Spears and Nisus, alleging that the damage to the Project caused by the sprinkler leaks was attributable to the incompatibility of their products. (*See* Doc. 1, ¶¶ 65–66). On September 27, 2021, Spears and Nisus each

submitted their answers, (Docs. 8, 9), and, thereafter, each filed Third-Party Complaints against Lemoine and several of the Project's subcontractors, alleging negligent design and installation of the sprinkler system. (*See* Doc. 9, ¶ 26–38; Doc. 14). Finally, on September 6, 2022, Spears and Nisus each amended their Third-Party Complaints to add various new claims and several new Third-Party Defendants, including claims against Westchester pursuant to Louisiana's Direct Action Statute, seeking to recover for the alleged negligence of Lemoine and various subcontractors, La. R.S. § 22:1269. (*See* Doc. 114, ¶ 78; Doc. 115, ¶ 203).

Now Westchester moves to dismiss Spears's and Nisus's third-party demands under Federal Rule of Civil Procedure ("Rule") 12(b)(6), solely on the basis that it has already paid its $2 million occurrence limit, and "[t]here can be no good faith argument that additional coverage exists under the Westchester Policy." (Doc. 176-1 at p. 10). Thus, because "Westchester's Policy limits are exhausted, there is no claim 'within the terms and limits' of the Westchester Policy and no right of action under La. R.S. § 22:1269 against Westchester." *Id.*

## II.  LAW AND ANALYSIS

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Under Rule 14, a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). A third-party claim must be secondary or derivative of the main claim and "the original defendant must be able to demonstrate a basis for the third-party defendant's liability to the defendant (also known as the third-party plaintiff)." *USAA Gen. Indem. Co. v. Scott*, 2016 WL 8711678, at *2 (E.D. La. July 29, 2016) (*citing McCain v. Clearview Dodge Sales, Inc.*, 574 F.2d 848, 849-50 (5th Cir. 1978)) (internal quotation marks omitted). "Thus, the third party must necessarily be liable over to the defendant for all or part of the plaintiff's recovery or…the defendant must attempt to pass on to the third party all or part of the liability asserted against the defendant." *Hanover Ins. Co. v. Superior Lab. Servs., Inc.*, 316 F.R.D. 179, 182 (E.D. La. 2016) (citations omitted).

Here, Spears and Nisus assert that Westchester is liable to them under Louisiana's Direct Action Statute, which provides an injured person or entity with "a right of direct action against the insurer within the terms and limits of the policy." La. R.S. 22:1269. Specifically, Spears "alleges that Westchester is liable for more than the amounts it already paid [the $2,000,000 occurrence limit] …[because] the policy at issue contains coverage beyond [those] amounts." (*See* Doc. 208 at p. 6). Spears posits that "it is possible the applicable policy limit is $4 million." (*See id.* at p. 8). Nisus maintains that "it has asserted valid claims of negligence against Westchester's

4

insureds." (*See* Doc. 206 at p. 11). Westchester seeks to dismiss Spears's and Nisus's demands because, in its view, its Policy is clear that any Project-related claims are limited by the $2 million occurrence limit—which has already been paid—and there is no set of facts under which the $4 million aggregate limit could possibly be triggered. At this stage, the Court cannot agree.

Under Louisiana law, "[a]n insurance contract is to be construed as a whole and each provision in the contract must be interpreted in light of the other provisions." *Sims v. Mulhearn Funeral Home, Inc.*, 2007-0054 (La. 5/22/07), 956 So. 2d 583, 589. "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written." *Id.* If, however, "after applying the general rules of contractual interpretation to an insurance contract, an ambiguity remains, the ambiguous contractual provision is generally construed against the insurer and in favor of coverage." *Id.*

Relevant here, Section III of the Westchester Policy sets forth "LIMITS OF INSURANCE." (*See* Doc. 176-3 at p. 18, Section III). Subject to certain exclusions, Section III states that "[t]he General Aggregate Limit is the most we will pay for the sum of ... Damages under [COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY." (*See* Doc. 176-3 at p. 18, Section III(2)(b)). In turn, "COVERAGE A" allows recovery for "property damage," defined to include both "[p]hysical injury to tangible property, including all resulting loss of use of that property," and "[l]oss of use of tangible property that is not physically injured." (*See*

5

*id.* at pp. 9, 23, Sections I(1)(a), Section V(17)). Notably, "COVERAGE A" further states: "[t]he amount we will pay for damages is limited as described in *Section III - Limits Of Insurance*." (*See id.* at p. 9, Section I(1)(a)(1)) (emphasis added).

Under any reading, the meaning of the term "General Aggregate Limit" within the Westchester Policy is circular: Section III states that "[t]he General Aggregate Limit is the most we will pay for the sum of ... Damages under Coverage A"; in turn, Coverage A states that "[t]he amount we will pay for damages is limited as described in Section III." A circular definition of a material term in an insurance contract necessarily creates ambiguity, generally requiring construction in favor of coverage. *See Dean Blanchard Seafood, Inc. v. Acadian Ins. Servs.*, 616 F. Supp. 2d 612, 622 (E.D. La. 2008) (Barbier, J.) (circular definitions of "building" and "structure" within the Standard Flood Insurance Policy required a construction in favor of coverage). Westchester does not address this oddity.

Moreover, it is not clear from the plain text of the Westchester Policy why the $2 million occurrence limit necessarily limits compensable damages caused by the Project's sprinkler leaks (and not the $4 aggregate limit), as Westchester now contends. True, "COVERAGE A" expressly allows Westchester, "at [its] discretion, [to] investigate any 'occurrence'"—defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions"—"and settle any claim or 'suit' that may result." (*See id.* at pp. 9, 23, Sections I(1)(a), Section V(13)). Missing, however, is any explanation as to when the occurrence limit applies to the exclusion of the aggregate limit. Again, Westchester fails to address the point.

6

What is *undisputed* is that Westchester did *not* pay the aggregate limit. Absent a more convincing showing, and in light of the ambiguities set forth above, it is plausible that the $4 million aggregate limit may yet apply to the damages resulting from the sprinkler leak. Spears and Nisus allege that if the aggregate limit *does* apply, Westchester should have paid an additional $2 million under the Westchester Policy, reducing any amount Spears and Nisus may owe to Allied. Dismissing Westchester from this suit at this early stage is premature.

## III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Westchester's **Motion to Dismiss Third-Party Complaints Pursuant to Rule 12(b)(6) (Doc. 176)** be and is hereby **DENIED**.

Baton Rouge, Louisiana, this 31ST day of August, 2023

**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**