**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**ALLIED WORLD NATIONAL**                          **CIVIL ACTION NO.**
**ASSURANCE COMPANY**
                                                    **21-431-BAJ-EWD**
**VERSUS**

**NISUS CORPORATION, ET AL.**

**RULING AND ORDER**

   This multi-party construction litigation has an extensive procedural history.  Currently before the Court are four discovery-related motions: 1) the Motion to Compel Nisus Corporation's Responses to Allied World National Assurance Company's Fourth Set of Requests for Production of Documents,[1] filed by Plaintiff Allied World National Assurance Company ("Allied"); 2) the Re-Urged Motion to Compel Nisus Corporation's Responses to Allied World National Assurance Company's Fifth Set of Requests for Production of Documents,[2] filed by Allied; 3) the Motion to Compel Depositions of Expert Witnesses,[3] filed by Defendants Nisus Corporation ("Nisus") and Evanston Insurance Company (collectively, "Nisus"); and 4) the Cross-Motion for Protective Order and to Quash,[4] filed by Allied.

   Allied seeks to compel additional responses to its Fourth and Fifth Sets of Requests for Production of Documents propounded on Nisus.  Nisus objects to many of the requests on grounds they seek information that is not relevant, and the requests are not proportional to the needs of the case.  Allied argues that Nisus' objections are improper.  Nisus seeks to compel the depositions of expert witnesses that a settling co-defendant recently assigned to Allied.  Allied has since designated the expert witnesses as non-testifying and contends Fed. R. Civ. P. Rule 26(b)(4)(D)'s consulting

---

[1] R. Doc. 295.
[2] R. Doc. 327.
[3] R. Doc. 340.
[4] R. Doc. 342.

witness privilege shields these witnesses from depositions barring a showing of exceptional circumstances. Allied seeks an order prohibiting Nisus from deposing its non-testifying experts.

As explained more fully, below, Allied's motion to compel responses to its Fourth Set of Requests for Production of Documents will be denied. Allied's motion to compel responses to its Fifth Set of Requests for Production of Documents will be granted in part. Nisus' Motion to Compel Depositions of Expert Witnesses will be denied, and Allied's Cross-Motion for Protective Order will be granted.

## I.    BACKGROUND AND RELEVANT PROCEDURAL HISTORY[5]

This case arises from the construction of a 28-acre mixed use housing development called the Nicholson Gateway Project ("the Project"). This Court previously summarized the facts of the underlying the action as follows:

> In 2016, Provident Group – Flagship Properties, LLC ("Provident") contracted with RISE Tigers, LLC to construct a 28-acre mixed used development including apartment buildings. Niles Bolton was hired as the architect for the Project. RISE then contracted with Lemoine to serve as the general contractor on the project. Lemoine in turn contracted out the work to various subcontractors, including Doster.
>
> The apartment buildings were outfitted with a fire suppression sprinkler system comprised primarily of chlorinated polyvinyl chloride pipe (CPVC) and related fittings and CPVC cement manufactured by Spears Manufacturing Company. During construction, Arrow, a subcontractor of Doster, sprayed a substance called Bora-Care with Mold-Care in the vicinity of the CPVC pipe to prevent the growth of mold and mildew on interior walls. Bora-Care with Mold Care is a termiticide/moldicide spray manufactured by Nisus.[6]

---

[5] The Court has discussed the facts underlying this matter several times, all of which are incorporated here by reference. *See* R. Docs. 64, 71, 72, 89, 103. Capitalized but undefined terms in this Ruling will have the same meaning as they do in the Court's prior Rulings.

[6] R. Doc. 72, pp. 1-2 (internal citations and footnotes removed).

After substantial completion of the Project in June 2018, Allied alleges that sprinkler leaks appeared and required the removal and replacement of the fire suppression systems in four apartment buildings.[7]

Allied's involvement stems from the fact that it provided excess layer coverage for the Project and, in response to a claim submitted by Lemoine, paid for a portion of the property damages caused by the sprinkler leaks.[8]  By subrogation, Allied filed suit against Nisus and Spears Manufacturing Company ("Spears") on July 23, 2021, asserting claims under the Louisiana Products Liability Act ("LPLA") relating to the termiticide/moldicide spray, manufactured by Nisus, and the CPVC sprinkler pipe, fittings and CPVC cement, manufactured by Spears.[9]  In its amended Complaint, Allied alleges that Nisus did not provide any warning that its product was incompatible with the type of CPVC pipe, fittings, and/or CPVC cement manufactured by Spears and used at the Project.[10]  Allied claims that Nisus is liable to it under the LPLA for, *inter alia*, the product's inadequate warnings.[11]  Against that backdrop, the Court turns to the discovery motions now before it.

## II.    ALLIED'S MOTION TO COMPEL RESPONSES TO FOURTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Allied Fourth Set of Requests for Production of Documents to Nisus seek almost 20 years of sales documents and communications relating to Nisus' Bora-Care with Mold-Care product as follows:

> **REQUEST FOR PRODUCTION NO. 88**:
> Please produce any and all documents and communications demonstrating and/or relating to the annual sales of Bora-Care with Mold-Care for every year from 2004 to present, including but not limited to the dollar value of profits, revenue, gross sales, and/or income, volume sold, price per co-pack container, and commission(s) paid by Nisus to salespersons, employees, and/or

---

[7] R. Doc. 113, ¶¶ 26-27, 61.
[8] R. Doc. 113, ¶¶ 55-59.
[9] R. Doc. 113, ¶¶ 70-71, 75-83, 86-96.  Allied also raised alternative claims of redhibition and breach of warranty against Nisus and Spears.  R. Doc. 113, ¶¶ 84-85, 97-98.
[10] R. Doc. 113, ¶ 39.
[11] R. Doc. 113, ¶ 83.

independent contractors of Nisus relating to the sales of Bora-Care with Mold-Care.

**REQUEST FOR PRODUCTION NO. 89**:
Please produce any and all documents and communications demonstrating and/or relating to the annual sales of Bora-Care with Mold-Care in/to Louisiana for every year from 2004 to present, including but not limited to the dollar value of profits, revenue, gross sales, and/or income, volume sold, price per co-pack container, and commission(s) paid by Nisus to salespersons, employees, and/or independent contractors of Nisus relating to the sales of Bora-Care with Mold-Care.[12]

Nisus objected to the requests, contending they sought information that was "not relevant or reasonably calculated to lead to the discovery of admissible evidence" and were disproportional to the needs of the case.[13]  Nisus also objected to Allied's requests as overly broad.[14]  Nisus did not produce any documents in response to these requests, prompting Allied's motion seeking an order for Nisus to provide "full and complete responses."  Allied also seeks reasonable attorney's fees and litigation expenses incurred in connection with the filing of its motion to compel.[15]

*Analysis*

Fed. R. Civ. P. 26(b) establishes the permissible scope of discovery, a scope that has shrunk since the implementation of the 2015 Amendments to the rule.[16]  Rule 26(b)(1) allows a party to "obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and *proportional* to the needs of the case."[17]  Whether discovery is proportional depends on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[18]

---

[12] R. Doc. 295-3.
[13] R. Doc. 295-4, pp. 2-3.
[14] *Id.*
[15] R. Doc. 295, p. 1.
[16] *Vinet v. BP Exploration & Production Inc.*, No. 18-9527, 2019 WL 3574294, at *4 (E.D. La. Aug. 6, 2019).
[17] Fed. R. Civ. P. 26(b)(1) (emphasis added).
[18] *Id.*

Information may fall within the scope of discovery even if it is not admissible in evidence.[19] Notably, the 2015 Amendments to Rule 26(b)(1) removed from the scope of discovery relevant but inadmissible information that appears "reasonably calculated to lead to the discovery of admissible evidence."[20]

Fed. R. Civ. P. 37 allows a party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery."[21] The moving party bears the burden of showing that the materials and information sought are discoverable.[22] The burden then shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted.[23] A court must limit discovery if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)."[24]

Allied initially claimed the sales data is relevant to show that Nisus failed to warn of the incompatibility of its product and profited from these misrepresentations.[25] In opposition, Nisus pointed out that Allied does not cite any cases where evidence of profitability or sales was found relevant to a failure to warn products liability claim. Nisus goes on to cite *Gray v. Hoffman-La Roche, Inc.*, in which the Tenth Circuit Court of Appeals upheld the trial court's exclusion of evidence related to the manufacturer's profit in a failure to warn case.[26] In reply, Allied refines its contention regarding the relevancy of the sales data, clarifying that the data is not relevant to show Nisus' financial motive but to show "the sheer number of opportunities Nisus had to adequately warn users and handlers of

---

[19] *Id.*

[20] *See Vinet*, 2019 WL 3574294, at *5, citing p. 155, Advisory Committee Notes to the 2015 Amendments to the Federal Rules of Civil Procedure (Thomson Reuters 2022 ed.).

[21] Fed. R. Civ. P. 37(a)(1).

[22] *United States ex rel. Mitchell v. CIT Bank, N.A.*, No. 14-833, 2021 WL 4439516, at *2 (E.D. Tex. Sept. 28, 2021) (citation omitted).

[23] *Id*.

[24] Fed. R. Civ. P. 26(b)(2)(C)(iii).

[25] R. Doc. 295-1, p. 4.

[26] R. Doc. 302, pp. 3-4, citing *Gray v. Hoffman-La Roche, Inc.*, 82 Fed.Appx. 639 (10th Cir. 2003).

the known dangers associated with exposing its product to CPVC, and chose not to."[27]

To maintain a failure to warn claim under the Louisiana Products Liability Act, a plaintiff must demonstrate that "at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product."[28] The claim requires the plaintiff to show: (1) the inadequacy of the warning provided, and (2) that the inadequate warning was the cause of his injuries.[29]  Notably, the number of times a manufacturer sells its product to other users and handlers has no apparent relevance to a failure to warn claim under Louisiana law.

In *St. Pierre v. Maingot*,[30] the United States District Court for the Eastern District of Louisiana declined to provide the plaintiff access to financial documents of the manufacturer in a defective design and failure to warn products liability case.  There, the court rejected the contention that the manufacturer's profits, revenues, and expenses were relevant to the failure to warn claim, noting that the plaintiff had cited no authority, and the court was not aware of any, that supports the proposition that such information is relevant to a failure to warn.  That court went on to hold that the only relevant considerations for the plaintiff's claims are "the costs of the [product] as designed, the costs of the plaintiff's alternative design, and the costs of providing adequate warnings.  This information may be obtained without granting the plaintiff access to [the manufacturer's] financial records.  Therefore, the plaintiff is not entitled to discover [the manufacturer's] financial information."[31]  Allied's motion

---

[27] R. Doc. 317, p. 3.

[28] La. R.S. 9:2800.57.

[29] *Batiste v. Stryker Corporation*, No. 19-574, 2020 WL 3451690, at *7 (M.D. La. June 24, 2020), quoting *Brocato v. DePuy Orthopaedics*, 2015 WL 854150, at *6 (E.D. La. Feb. 25, 2015).

[30] No. 01-2291, 2002 WL 31655355 (E.D. La. Nov. 21, 2022).

[31] 2002 WL 31655355, at *4. *See also, Bunch v. Pacific Cycle, Inc*., No. 13-36, 2015 WL 11622952 (stating "[e]vidence of Defendant's profit margin or motive to maximize profits is irrelevant to Plaintiffs' failure to warn claims in this case, collecting cases, including *Gray*, 82 Fed.App. at 651); *In re Norplant Contraceptive Products Liability Litigation*, No. MDL 1038, 1997 WL 80526, at *1 (E.D. Tex. Feb. 19, 1997) ("evidence of profit margin is not admissible because the

to compel suffers the same deficiencies. Documents establishing Nisus' marketing and sales to other purchasers are likewise irrelevant to the elements of Allied's failure to warn claim against Nisus and Allied points to no authority for this Court to conclude otherwise.

Additionally, Allied's requests for almost 20 years of sales documents and communications from Nisus, propounded more than two years after the start of this litigation as requests for production numbers 88 and 89, fail to satisfy the proportionality requirement of Fed. R. Civ. P. 26(b)(1). Allied contends it needs the documents dating from 2004 to present because Nisus was first made aware that its product was incompatible with CPVC piping in 2005.[32] During a telephone conference to discuss the motion, the Court advised Allied's counsel that "the temporal limitation and scope of the requests seem disproportional to the needs of the case."[33] Allied nevertheless persists in its contention that these discovery requests are proportional, arguing that the "where, when, how, and to who[m] Nisus sold and marketed Bora-Care with Mold-Care is important to the issues of the present case" and "what Nisus was telling its customers speaks directly to [the] adequacy of any warnings Nisus may have provided regarding Bora-Care with Mold-Care."[34]

The Court disagrees. The limited importance of the information is evidenced by the lack of relevancy to the specific elements of Allied's failure to warn claim. The burden and expense associated with gathering the documents responsive to the broad requests seeking almost 20 years of sales documents and communications outweighs any possible benefit, notwithstanding Allied's allegation that Nisus first learned of the incompatibility between Bora-Care with Mold-Care and

---

evidence is not relevant to failure to warn issue"). While Allied correctly notes that some of these cases are decided in the context of motions *in limine* to exclude evidence and that the scope of discovery is broader than what is admissible, as the financial documents do not have any apparent relevancy to Allied's failure to warn claim, the reasoning of these cases is still instructive.

[32] R. Doc. 295-1, p. 4.

[33] R. Doc. 301, p. 3. While the Court also advised at that time that the requests "appear relevant to Allied's claims in the case," further review of the arguments and relevant precedent have caused the Court to conclude otherwise.

[34] R. Doc. 317, p. 5.

CPVC piping in 2005.[35]  Accordingly, the requests are not proportional to the needs of the case.

As Allied failed to satisfy its burden of establishing that the materials sought are relevant or proportional, Allied's motion to compel will be denied as to the Fourth Set of Requests.[36]  Allied's request for attorney's fees and expenses under Fed. R. Civ. P. 37(a)(5)(A) with regard to this motion will also be denied as moot.

## III.    ALLIED'S RE-URGED MOTION TO COMPEL RESPONSES TO FIFTH SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Allied's other Motion to Compel relates to its Fifth Set of Requests for Production of Documents propounded on Nisus, which contains eighteen requests that seek a broad array of documents between Nisus and Lonza, Inc. ("Lonza"), the company from whom Nisus allegedly purchased the product that Nisus repackaged as Mold-Care.[37]  The following request is indicative of the majority of Allied's requests—overly broad in scope and lacking any temporal limitation:

> **REQUEST FOR PRODUCTION NO. 89**:
> Any and all correspondence, contracts, and/or agreements with Lonza relating to the distribution, supplemental distribution, registration, supplemental registration, sub-registration, trademarking, packaging, repackaging, marketing, branding, and sale of Mold-Care.[38]

Allied filed these requests on October 6, 2023, shortly before the fact discovery deadline.[39]  When Nisus failed to timely respond, Allied filed a motion to compel.[40]

After a telephone conference with counsel to discuss Allied's motion, the Court ordered Nisus to respond to the discovery requests by December 11, 2023 and gave Allied until December 15, 2023

---

[35] It is undisputed that the Bora-Care with Mold-Care was used on the Project sometime between 2016 and 2018.
[36] Because Allied did not meet its initial burden of establishing the materials and information sought are discoverable, the burden does not shift to Nisus to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted.  *Mitchell v. CIT Bank, N.A.*, No. 14-833, 2021 WL 4439516, at *2
[37] R. Doc. 327-1, p. 2 and R. Doc. 327-3.
[38] R. Doc. 327-3, p. 3.
[39] R. Doc. 279.
[40] R. Doc. 308.

to file any re-urged Motion to Compel.[41]  Nisus timely responded before the Court's deadline.[42]  In its responses, Nisus asserted a long list of objections, including that the requests seek information that is not relevant or proportional and that the requests are overly broad and open-ended.  Nisus' responses also raised unspecified privileges.[43]  While some documents were identified in its responses, Nisus gave Allied a privilege log that indicated Lonza's Master Supplemental Registration and Repack Agreement ("Master Repack Agreement") was withheld on grounds it was "confidential business information."[44]  Dissatisfied with Nisus' responses, Allied filed the re-urged motion to compel that is pending before the Court.[45]

Allied asks the Court to compel Nisus to remove all untimely and/or improper objections; to specify whether it has produced all responsive documents in its possession; and to produce all documents improperly withheld, including the Master Repack Agreement.[46]  Allied also asks for an award of attorneys' fees incurred in connection with filing the motion.[47]  In opposition, Nisus contends the only disputes remaining between the parties are: 1) whether Nisus should be required to produce the Master Repack Agreement without redactions; and 2) whether Nisus should be required to produce records of royalties or other payments to Lonza because it contends the requested documents are irrelevant and not proportional to the needs of the case and because it has no responsive documents in its possession.[48]  In reply, Allied asserts the Master Repack Agreement was improperly withheld because a Protective Order has been entered in the case that establishes a protocol for "confidential" materials produced in the case.[49]

---

[41] R. Doc. 324.
[42] R. Doc. 327-3.
[43] R. Doc. 327-3.  *See, e.g.*, Nisus' Response to Request for Production Nos. 88, 89, 92, 96.
[44] *See, e.g.*, Nisus' Response to Request for Production Nos. 88, 89.  R. Doc. 327-3, pp. 2-4.  *See also* R. Doc. 327-4.
[45] R. Doc. 327.
[46] R. Doc. 327-1, p. 1.
[47] R. Doc. 327, p. 1.
[48] R. Doc. 329, p. 1.
[49] R. Doc. 335, p. 1.  *See also* R. Docs. 223 and 224.

_Analysis_

Allied's motion raises several issues regarding the legal requirements that govern responses to Requests for Production of Documents, including the legal effect of untimely raised objections; the requirements that govern objections to requests for production; and the issue of whether a responsive document can be withheld as "confidential" if a protective order has been entered that adequately addresses confidentiality concerns.

### A.    Waiver of Objections

Allied argues that Nisus waived all objections, except those pertaining to applicable privileges or immunities, because Nisus failed to timely respond to its discovery requests.  The discovery requests at issue were propounded by Allied on October 6, 2023.[50] Allied's original motion to compel responses represented that responses had not been received and no extension was sought as of the time that motion was filed on November 22, 2023.[51] The Court held a telephone conference to discuss the first motion to compel responses to these requests on December 6, 2023.  At the conference, Nisus advised that it could respond to the discovery requests by the end of the week.  Allied did not object to the proposed timeframe for Nisus to provide responses. The Court ordered Nisus to provide responses by no later than December 11, 2023.  Allied was permitted to file any reurged motion to compel by no later than December 15, 2023, and the original motion to compel this information was terminated based on the parties' agreement.[52]  The minutes of the telephone conference do not reflect that Allied alerted the Court to its intent to continue to argue that Nisus had waived all objections except those pertaining to applicable privileges or immunities by failing to timely respond.  The telephone conference was the appropriate time for Allied to do so, especially when the Court

---

[50] R. Doc. 308-1.
[51] R. Doc. 308-3.
[52] R. Doc. 324.

specifically solicited whether Allied had any objection to the proposed timeframe for the responses.

Even if Allied properly preserved its waiver argument, it is not dispositive in this case. While it is the general rule that a party waives objections other than privilege when it fails to timely respond to discovery,[53] some courts have declined to waive untimely objections when the failure to timely respond was not "so egregious as to merit a waiver of all objections"[54] and where the Court did not find the "late assertion of these objections has been made in bad faith or with dilatory intent."[55]

Further, Allied, as the movant, bears the initial burden of showing that the materials and information sought are discoverable.[56] Allied propounded a Fifth Set of Requests for Production of Documents, putting Allied's requests for production to Nisus in this case at over 100, and many of these requests exceed the scope of permissible discovery because they are overly broad and lack sufficient temporal limits.[57] In short, Allied's discovery requests are not stated with reasonable particularity to make them enforceable in the first instance. Additionally, while Nisus' responses were originally untimely, Nisus' failure to timely respond was not so egregious as to merit a waiver of all objections. This is particularly true given the impermissible scope of the requests, that Allied did not advise the Court that it intended to maintain that Nisus' responses were untimely when the Court imposed the deadline to respond, and that the responses were provided by the Court-ordered

---

[53] *In re. U.S.*, 864 F.2d 1153, 1156 (5th Cir. 1989).

[54] *Cheshire v. Air Methods Corp.*, No. 15-933, 2015 WL 7736649, at *3 (W.D. La. Nov. 30, 2015).

[55] *Deane v. Dynasplint Systems, Inc.*, No. 10-2085, 2015 WL 1638022, at *2 (E.D. La. April 13, 2015).

[56] *Mitchell*, 2021 WL 4439516, at *2.

[57] Fed. R. Civ. P. Rule 34(b)(1)(A) requires that discovery requests be stated with "reasonable particularity." *McCoy v. SC Tiger Manor, LLC*, No. 19-723, 2021 WL 1321303, at *4 (M.D. La. Apr. 8, 2021), citing *Minnis v. Bd. of Supervisors of La. State Univ. Agric. & Mech. College*, No. 13-05, 2013 WL 6271940, at *6 (M.D. La. Dec. 4, 2013) ("The goal is that the description be sufficient to apprise a man of ordinary intelligence which documents are required."); *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 575 (N.D. Tex. 2018) ("The test for reasonable particularity is whether the request places the party upon reasonable notice of what is called for and what is not.... All-encompassing demands that do not allow a reasonable person to ascertain which documents are required do not meet the particularity standard of Rule 34(b)(1)(A)."). *See also, Rotstain v. Trustmark National Bank*, No. 09-2384, 2020 WL 6550501, at * 6 (N.D. Tex. Nov. 6, 2020) ("Although what constitutes sufficient information depends on the circumstances of the case, 'a discovery request should be sufficiently definite and limited in scope that it can be said to apprise a person of ordinary intelligence what documents are required and [to enable] the court ... to ascertain whether the requested documents have been produced.'").

deadline.[58]  Under the circumstances, Nisus' objections have not been waived.

### B.    Objections

Allied next contends Nisus' responses improperly fail to specify whether any documents were withheld on the basis of its objections.  Fed. R. Civ. P. Rule 34(b)(2)(C) requires that any objection to a request for production must state whether any responsive materials are being withheld on the basis of that objection.  This provision, added in 2015, was intended to

> end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections.  The producing party does not need to provide a detailed description or log of all documents withheld, but does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection.  An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been "withheld."[59]

Nisus' responses do not satisfy Fed. R. Civ. P. Rule 34(b)(2)(C)'s requirement that an objection to a request for production state whether any responsive materials have been withheld based on the objection, as the following response by Nisus illustrates:[60]

> **RESPONSE TO REQUEST FOR PRODUCTION NO. 92**:
> Nisus objects to this request for production as overly broad, unduly burdensome, vague, and ambiguous and seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence.  Nisus further objects to the use of "any and all" as overly broad.  Nisus further objects to the extent this request for production seeks information that is subject to the attorney-client privilege, the work product privilege, or any other applicable privilege.  Nisus further objects to the extent that the information sought in this request for production is not proportional to the needs of the case.  Nisus further objects to the extent that

---

[58] *See, e.g., Cheshire*, 2015 WL 7736649, at *3.
[59] *Smith v. China Manufacturers Alliance LLC*, No. 19-01111, 2023 WL 4922941, at **7-8 (W.D. La. Aug. 1, 2023), quoting Fed. R. Civ. P. 34, Advisory Committee Notes to 2015 Amendment.
[60] R. Doc. 327-3, p. 7.  The response was to the following request:
> **REQUEST FOR PRODUCTION NO. 92**:
> Any and all documents evidencing all royalties and/or other sums paid and/or owed by Nisus to Lonza in connection with Nisus' distribution, supplemental distribution, registration, supplemental registration, sub-registration, trademarking, packaging, repackaging, marketing, branding, and sale of Bardac Wood Preservative 80, and communications related thereto.

the request for production seeks legal conclusions and interpretations from corporate representatives.[61]

Nor do Nisus' responses state the limits that controlled its search for responsive and relevant materials, which the Advisory Comments suggests as an alternate means of satisfying the requirements of Rule 34(b)(2)(C). Instead, Nisus argues that it informed Allied's counsel by e-mail that it does not have any more responsive documents in its possession.[62]

The United States District Court for the Western District of Louisiana considered the propriety of similar responses in the case of *Smith v. China Manufacturers Alliance LLC*, and found the responses deficient.[63] In *Smith*, the plaintiffs identified responses where it was unclear whether defendants produced all responsive documents, and plaintiffs expressed concerns that defendants were withholding otherwise responsive documents on the basis of their objection or because the documents did not correspond to the defendants' chosen definition of relevance. Defendants countered that they did not limit their production based on the scope of their objections and asserted they were not withholding any responsive documents. The *Smith* court found the defendants' responses contained instances of ambiguity that could suggest that discoverable materials were withheld and ordered defendants to supplement their discovery responses to comply with Rule 34(b)(2)(C).[64] The defendants were instructed that each response should clearly state whether any responsive documents were withheld based on an objection.[65]

As in *Smith*, many of Nisus' responses are either ambiguous or fail to address whether responsive materials have been withheld based on an objection. Accordingly, Nisus will be ordered

---

[61] R. Doc. 327-3, p. 7.
[62] R. Doc. 329, p. 2 and R. Doc. 329-2, p. 2.
[63] *Smith*, 2023 WL 4922941, at *7.
[64] *Id.*
[65] *Id.* at *8.

to supplement its responses to Allied's Fifth Set of Requests for Production of Documents to comply with the requirements of Fed. R. Civ. P. Rule 34(b)(2)(C).[66]

### C.    Production of Master Repack Agreement

The last issue raised by Allied's motion to compel with regard to the Fifth Set of Requests for Production is whether Nisus could properly withhold production of the Master Repack Agreement between Nisus and Lonza on grounds it is confidential business information.[67]  Allied contends it needs to obtain a copy of the Master Repack Agreement from Nisus because it does not know whether the version it received from a non-party is the same version possessed by Nisus, as e-mails produced by Nisus in discovery suggest the Agreement may have undergone revisions.[68]  Allied also points out that the Master Repack Agreement appears to be an attachment to one of the e-mails Nisus produced to Allied in discovery.[69]  Allied argues it would be inappropriate to mix-and-match documents for use as exhibits at trial, as Nisus suggests, especially when there is no appreciable burden associated with ordering Nisus to produce the document.[70]  Allied also notes that a Protective Order was previously entered in the case that provides for the designation of materials produced in the action as "confidential."[71]  In opposition, Nisus argues it should not be ordered to produce an *unredacted* version of the Agreement without explaining the basis for its decision to withhold production of the document.[72]

---

[66] Although Nisus has arguably done this through counsel's December 19, 2023 email correspondence (R. Doc. 329-1) the Court will require Nisus to specifically state in the context of its written discovery responses, which are provided subject to Fed. R. Civ. P. 11, whether it has withheld any responsive materials on the basis of its objections.

[67] R. Doc. 327-4, p. 1.

[68] R. Doc. 335, p. 2.

[69] R. Doc. 335, p. 1

[70] R. Doc. 335, p. 1.

[71] R. Doc. 335, p. 1.  *See also* R. Docs. 223 and 224.

[72] R. Doc. 329, p. 4. The only case Nisus cites in support of its argument that a party may still redact a document even in cases where a protective order has been entered does not support its position because the court in that case ordered the defendant to produce the disputed documents in an unredacted form, in part because the protective order provided sufficient protection. *Jackson v. Wexford Health Sources, Inc.*, No. 20-900, 2023 WL 4352068, at ** 10-11 (S.D. Ill. July 5, 2023).

Fed. R. Civ. P. 26 provides that when a party withholds information otherwise discoverable by claiming the information is privileged or subject to protection as trial-preparation material, the party must expressly make the claim and describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that will enable other parties to assess the claim.  The party asserting privilege bears the burden of demonstrating its applicability.[73] The United States District Court for Eastern District of Louisiana recently rejected a party's attempt to withhold a document as confidential in a case where a protective order was entered, finding that the protective order adequately addressed confidentiality concerns.[74]  Here, Nisus has not shown why the protections offered by the case's Protective Order are not sufficient.  To the contrary, the Protective Order entered in this case adequately addresses any confidentiality concerns.[75]  As Nisus failed to satisfy its burden of demonstrating it could properly withhold production of the Master Repack Agreement on the basis of any privilege, the Court will order Nisus to produce unredacted copies of the Master Repack Agreement (Bates labeled documents NISUS_003099-003107; NISUS_003151-003156; and NISUS_003195-003200) to Allied.

Allied's Motion to Compel Responses to Allied's Fifth Set of Requests for Production of Documents will be granted in part, as set forth above.  To the extent Allied's motion requests an award of attorneys' fees, the motion will be denied. The factual and legal issues raised concerning the propriety of the objections Nisus raised, the excessive scope of Allied's discovery requests, and the documents Nisus withheld from production do not justify an award of fees to either party.[76] Accordingly, the request for attorneys' fees is denied.

---

[73] *United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002) (citation omitted).
[74] *Civic Center Site Development, LLC v. Certain Underwriters at Lloyd's London (Consortium #9226)*, No. 23-1071, 2023 WL 5974843, at *9 (E.D. La. Sept. 14, 2023).
[75] Although the Master Repack Agreement may be of limited relevance to the claims at issue, because it is alleged to have been attached to an email Nisus produced and because it would appear to burden Nisus very little to produce unredacted versions of the Master Repack Agreement to allow Allied to determine whether the versions of the agreement that were withheld match the version received from a non-party, the production will be ordered.
[76] *See, e.g., Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 268 (W.D. Tex. Oct. 30, 2006).

### IV.    NISUS' MOTION TO COMPEL DEPOSITIONS OF EXPERT WITNESSES

The last issue before the Court concerns the consulting witness privilege contained in Fed. R. Civ. P. Rule 26(b)(4)(D), and whether it can be invoked by Allied to preclude Nisus from deposing Allied's non-testifying experts absent exceptional circumstances.   The events precipitating the filing of Nisus' motion began on February 8, 2024, when Allied's counsel sent a letter to opposing counsel advising that Allied had settled its claims against Nisus' co-defendant, Spears.[77]  The letter went on to state that Spears assigned its three experts witnesses to Allied and Allied had designated these expert witnesses as non-testifying ("the Spears Experts").[78]  The following day, Nisus e-mailed opposing counsel a Subpoena and Notice of Video Deposition directed to one of the Spears Experts, setting his deposition for February 29, 2024.[79]  Allied's counsel responded that the witness would not appear for the deposition.[80]  Nisus then filed its Motion to Compel.[81]

Nisus contends the expert witnesses are precluded from invoking the consulting witness privilege contained in Fed. R. Civ. P. 26(b)(4)(D) because the Spears Experts were previously designated as testifying experts.  In support, Nisus points to the fact that Spears' expert disclosure identified three expert witnesses "it believes it will call to testify at trial."[82]   Nisus also points to the fact that Spears already produced its experts' reports to opposing counsel.[83]   Under these circumstances, where the experts' opinions have already been disclosed, Nisus contends the privilege is waived and no exceptional circumstances should be required to depose them.[84]

---

[77] R. Doc. 340-12.
[78] R. Doc. 340-12.
[79] R. Doc. 340-14, pp. 3-4, and R. Doc. 340-8.
[80] R. Doc. 340-13.
[81] R. Doc. 340.
[82] R. Doc 340-3.  The three expert witnesses Spears identified were William R. LeCorgne, Jr., P.E.; Regan Lawson, Ph.D., ASP; and James D. Rancourt, Ph.D.
[83] R. Doc. 340-4.
[84] R. Doc. 340-2, p. 8.

In opposition, Allied contends the consulting witness privilege requires Nisus to establish exceptional circumstances to depose the Spears Experts.   Allied contends no exceptional circumstances exist in this case as the opinions the Spears Experts offer are duplicative and unnecessary in light of the testimony Nisus' experts are expected to supply.[85]   Allied also points out that if Nisus wanted to rely on the testimony of the Spears Experts, it could have—but did not— co-designate the Spears Experts as testifying witnesses.[86]   Allied contends it should not be deprived of the benefit of its bargain with Spears because Nisus wants the testimony of another party's experts.[87]   Allied concludes by asking the Court to impose a protective order prohibiting Nisus from deposing the Spears Experts and, alternatively, asking the Court to quash the subpoena directed to William R. LeCorgne, Jr., P.E., as unenforceable for failure to prove the requisite fees have been tendered for the deposition of another party's expert.[88]

*Analysis*

Fed. R. Civ P. Rule 26(b)(4) establishes the circumstances under which an expert can be deposed.  The rule provides that a party may depose any person who has been identified as an expert whose opinions may be presented at trial.  Ordinarily, however, a party may not, by interrogatories or deposition, discover facts known or opinions held by a consulting expert, that is one who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.[89]   A party may not seek to depose a consulting witness absent a showing of exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.[90]   The purpose of Rule 26(b)(4)(A) is to ensure a party's ability to properly prepare to effectively cross examine his opponent's experts at

---

[85] R. Doc. 342, pp. 9-10.
[86] R. Doc. 342, p. 15.
[87] R. Doc. 342, pp. 13-14.
[88] Fed. R. Civ. P. Rule 45(b)(1) and Fed. R. Civ. P. 26(b)(4)(E)
[89] Fed. R. Civ. P. 26(b)(4)(D).
[90] Fed. R. Civ. P. 26(b)(4)(D)(ii).

trial.[91]    Rule 26(b)(4)(D), in contrast, is intended to prevent a party from benefiting from an opponent's trial preparation.[92]

Both Nisus and Allied cite legitimate policies that support their respective positions.  For instance, Nisus contends that allowing it to depose the Spears Experts without a showing of exceptional circumstances fosters the policy favoring broad discovery, suggesting it is contrary to the principles of the discovery rules to allow a party to "buy" the right to suppress information.[93] Conversely, Allied points to fact that Rule 26(b)(4)(D) is intended to prevent a party from piggybacking on another party's trial preparation and that the law favors voluntary settlements of lawsuits.[94]  To preclude a plaintiff from buying the expertise of a settling defendant could discourage the settlement process and frustrate the public policy in favor of settlement.[95]

A similar issue arose in the case of *Estate of Manship v. United States*.[96] There, the defendant identified two expert witnesses as testifying witnesses but, after the close of fact discovery, changed their designation to non-testifying experts.  The defendant sought a protective order after the plaintiffs sought to depose the experts.  Plaintiffs argued they should be permitted to depose the experts because the experts had only been re-designated as non-testifying experts after the court-imposed deadline for exchanging witness lists.  After a thorough review of the various approaches employed by courts around the country, this Court found that the majority approach was to allow the consultative privilege to be restored, even if a testifying expert witness' designation was withdrawn after his/her opinions

---

[91] *Decena v. American Intern. Companies (AIG)*, No. 11-1574, 2012 WL 1565258, at *2 (E.D. La. May 2, 2012), citing Fed. R. Civ. P. 26, Advisory Committee Notes (1970).

[92] *Id*., citing Fed. R. Civ. P. 26, Advisory Committee Notes (1970).

[93] R. Doc. 340-2, citing *Rocky Mountain Natural Gas Co. v. Cooper Industries, Inc*., No. 95-1892, 166 F.R.D. 481, 483 (D.Col. May 6, 1996) (citation omitted).

[94] R. Doc. 342, pp. 9, 12, citing *Labat v. Rayner*, No. 20-447, 2022 WL 1442982, at *2 (E.D. La. May 4, 2022) (citation omitted) and *Wolt v. Sherwood, a Division of Harsco Corp*., No. 92-486, 828 F.Supp. 1562, 1568 (D. Utah Aug. 6, 1993) (citation omitted).

[95] *Wolt*, 828 F.Supp. at 1568.

[96] 240 F.R.D. 229 (M.D. La. Dec. 18, 2006).

were disclosed,[97] which requires a showing of "exceptional circumstances" to depose an expert that has been redesignated as non-testifying.[98]

One of the cases discussed in *Manship* is *Green v. Nygaard*.[99] In *Green*, the appellate court overruled a district court decision compelling discovery of an expert's file. At issue was whether an expert's immunity from discovery can be restored when the redesignation to non-witness status occurs after the expert has offered opinions. The *Green* court found no cases directly addressing the issue, though some earlier opinions had suggested in dicta that immunity could be restored if the expert had not yet offered opinions. "[G]uided by the plain language of Rule 26(b)(4) and the policies it embodies," and based on a determination that other federal cases on the issue must be considered persuasive because of the need for "uniformity in interpretation" of the federal rules, that court held that the work product protection was restored to the expert upon redesignation to non-witness status and that discovery of his file could not be obtained absent a showing of "exceptional circumstances" as required by Rule 26(b)(4)(B), even though the expert had already offered opinion testimony in a preliminary hearing.[100] The *Green* court stated, "[t]he judge ultimately did not rely on [the expert's] testimony to resolve any material issue in the underlying case, and [the expert] will not testify again at trial or otherwise. Because James has no need to prepare for cross-examination of [the expert], "there is no reason to disregard Rule 26(b)(4)(B)," and the relevant inquiry is whether James can establish the exceptional circumstances required to justify discovery of a consulting expert's files.[101]

*Manship* also cites *Callaway Golf Co. v. Dunlop Slazenger Group Americas*.[102] In *Callaway* the court confronted virtually the same issue that is before this Court, namely, "whether under the applicable civil rules of discovery may a party withdraw an expert who had been previously identified

---

[97] *Id*., at 237.
[98] *Id*.
[99] 143 P.3d 393 (Ct.App. Ariz. 2006).
[100] 143 P.3d at 397-98.
[101] 143 P.3d at 398, citing *Mantolete v. Bolger*, 96 F.R.D. 179, 182, n.2 (D. Ariz. 1982).
[102] No. 01-669, 2002 WL 1906628 (D. Del. Aug. 14, 2002).

as a testifying expert and thereby, prevent the opposing party from deposing that expert?"[103] The *Callaway* court also reviewed decisions from other courts, finding as follows:

> A common theme is apparent throughout the cases reviewed from various jurisdictions—the conversion of an expert designated for trial purposes under Rule 26(b)(4)(A), to a consulting expert, under Rule 26(b)(4)(B) is allowed and results in insulating that expert from discovery, absent the showing of exceptional circumstances. Although some of the cases identified herein by the parties did not indicate whether disclosure of the opinions had occurred before the change in designation, in those cases where such disclosure had clearly occurred, *In re Shell Oil Refinery* and *FMC Corporation*, the analysis was consistent between those two cases, as well as with the non-disclosure cases. Divulging the expert opinions did not alter the analysis. The only exception was *House*, where that plaintiff had undergone a medical examination by defendant's expert, one of the exceptions under 26(b)(4)(B).[104]

Review of the applicable case law shows that the weight of the authority favors a finding that, absent exceptional circumstances, Nisus is not permitted to depose the Spears Experts, who have been assigned to Allied and redesignated as non-testifying experts.  The purpose of Rule 26(b)(4)(A) is to permit parties to prepare for cross-examination of witnesses to avoid surprise at trial.  The purpose is not met where, as here, the Spears Experts have been redesignated as non-testifying and Nisus has not argued, much less shown, exceptional circumstances to warrant permitting the depositions of these experts.[105]

Additionally, the role the settlement played in the re-designation of the Spears Experts supports restoration of the consulting witness privilege as Allied alleges the assignment of the Spears Experts constituted consideration for the settlement agreement reached by Allied and Spears.[106] Although Nisus relies heavily on the Texas Supreme Court decision in *Tom L. Scott, Inc. v.*

---

[103] 2002 WL 1906628, at *1.
[104] *Id.*, at *3.
[105] Exceptional circumstances within the meaning of Fed. R. Civ. P. 26(b)(4)(D)(ii) are established by showing it is impracticable for the party to obtain facts or opinions on the same subject by other means.
[106] R. Doc. 342, p. 3.

*McIlhany*[107] which held that it was against public policy to permit the assignment and redesignation of testifying expert witnesses to consulting experts pursuant to a settlement agreement, other cases have rejected the reasoning in *Scott*. For example, in *Wolt*, the court found that, "[u]nlike Texas, the Federal Rules of Civil Procedure provide broad protection against discovery of opinions held by consulting experts.  Only upon a showing of 'exceptional circumstances,' …can a party obtain information from the consulting experts of another party."[108] "To preclude a plaintiff from buying the expertise of a settling defendant could discourage the settlement process, and frustrate the public policy in favor of settlement,"[109] which this Court declines to do.[110]  The Court will, therefore, deny Nisus' Motion to Compel Depositions and grant Allied's Cross-Motion for a Protective Order.  Nisus will not be permitted to take the depositions of Allied's non-testifying experts, William LeCorgne, James Rancourt, and Regan Lawson.  Allied's alternative motion to quash the subpoena issued to William LeCorgne is denied as moot.

Accordingly,

**IT IS ORDERED** that Allied's Motion to Compel Nisus Corporation's Responses to Allied World National Assurance Company's Fourth Set of Requests for Production for Documents[111] is **DENIED**, and Allied's request for fees and costs is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Allied's Re-Urged Motion to Compel Nisus Corporation's Responses to Allied World National Assurance Company's Fifth Set of Requests for Production of Documents[112] is **GRANTED IN PART**.  By no later than **May 17, 2024** Nisus shall do the following:

---

[107] 798 S.W.2d 556 (Tex.1990).
[108] *Wolt*, 828 F.Supp. at 1567.
[109] *Id*., at 1568.
[110] Other courts have also noted that parties should not expect to piggyback off another party's expert.
[111] R. Doc. 295.
[112] R. Doc. 327.

- Supplement its responses to Allied's Fifth Set of Requests for Production of Documents to comply with the requirements of Fed. R. Civ. P. Rule 34(b)(2)(C). Each response should clearly state whether any responsive documents have been withheld on the basis of the; and

- Produce to Allied unredacted copies of the Master Repack Agreement (Bates labeled documents NISUS_003099-003107; NISUS_003151-003156; and NISUS_003195-003200).

All other requests for relief in Allied's Re-Urged Motion to Compel are **DENIED**, including Allied's request for fees and costs.

      **IT IS FURTHER ORDERED** that Nisus' Motion to Compel Depositions of Expert Witnesses[113] is **DENIED**; Allied's Cross-Motion for Protective Order[114] is **GRANTED;** and Allied's Alternative Motion to Quash[115] the subpoena issued to William LeCorgne is **DENIED AS MOOT**. Nisus will not be permitted to depose Allied's non-testifying experts: William LeCorgne, James Rancourt, and Regan Lawson.

      Signed in Baton Rouge, Louisiana, on May 3, 2024.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[113] R. Doc. 340.
[114] R. Doc. 342.
[115] R. Doc. 342.

22